John L. KING, Trustee, Plaintiff,

v.

Frank SHARP et al., Defendants.

Civ. A. No. CA-3-6289.

United States District Court,
N. D. Texas,
Dallas Division.

May 1, 1974.

Linda N. Coffee, Dallas, Tex., for plaintiff.

Ray Besing, Dallas, Tex., John J. King, Houston, Tex., Philip Wilson, Jay M. Vogelson, David R. McAtee, Dallas. Tex., for defendants.

## ORDER DENYING MOTION FOR CLASS ACTION

ROBERT M. HILL, District Judge.

Plaintiff John L. King and Intervenor Marjorie Huxley Silver have filed a motion for this court to order that this case proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The court has considered the motion and the briefs and is of the opinion that this case should not proceed as a class action.

### I. *Allegations*

On September 14, 1972, John L. King, Trustee under Chapter X of the Bankruptcy Act in the reorganization of RIC International Industries, Inc., (hereinafter "RIC") filed this suit alleging a scheme by the defendants to defraud RIC, waste its assets, manipulate the market price of its shares, issue securities in violation of the securities laws and to defraud the shareholders and creditors of RIC. Specifically, the Trustee claims that the defendants conspired to have a substantial number of RIC's shares issued without the required registration under the securities laws and caused RIC to acquire some fifteen companies at inflated or unfair prices, to borrow beyond its financial ability, and to issue materially misleading financial statements and press releases. There is also a broad claim that RIC was mismanaged to the detriment of its shareholders and creditors.

The defendants fall into three groupings. The first group consists of the "Beaird" defendants who controlled RIC from 1966 through September of 1969. The second group consists of the Sharp-Carr-Osorio defendants who controlled RIC from September of 1969 to the filing of the bankruptcy petition in 1970. The third group consists of various other defendants who aided the "Beaird" and "Sharp-Carr-Osorio" groups during the relevant periods of the time.

Trustee and intervenor seek leave to proceed on behalf of a class consisting of all shareholders and creditors of RIC and all others who sustained a loss as a result of any purchase of, or bona fide loan against, the common stock of RIC between September 26, 1966 and September 16, 1970. The only claims which the proposed class could assert independent of any recovery by the Trustee arise from the alleged publication of misleading statements and the improper issuance of stock in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5, promulgated by the Securities & Exchange Commission, 17 C.F.R. 240.10b–5.

### II. *Trustee's Claims*

There are two issues to be considered regarding the Trustee's motion to represent the above class. First, does the Trustee have standing and, second, assuming he does have standing, would a conflict of interest exist from the Trustee's dual representation of the creditors and the class. The court finds against the Trustee on both issues.

## A. Standing of the Trustee to Represent the Class

 It is clear from Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), that a Chapter X Trustee under the Bankruptcy Act has no statutory authority to collect money on behalf of third parties. His authority is simply to collect and reduce to money the "property" of the bankrupt estate for which he is trustee. McCandless v. Furlaud, 296 U.S. 140, 56 S.Ct. 41, 80 L.Ed. 121 (1935). Further, a Chapter X Trustee is a legal entity created by law and can have no greater powers or rights than the law creates. Congress has not seen fit to endow a Chapter X Trustee with the freedom to champion causes that will produce benefits to third parties. If the bankrupt estate has no cause of action in its own right, then the Trustee has no authority to institute suits as a class representative or otherwise for the benefit of third parties.

It is *not* urged that RIC sustained any loss as a result of any bona fide loan RIC made which was secured by RIC stock. However, the Trustee maintains that RIC was a "purchaser" of its own stock and therefore has standing to represent the proposed class of RIC shareholders and creditors during the relevant period. Carpenter v. Hall, 311 F.Supp. 1099 (S.D.Tex.1970) mandamus denied, sub nom. Ernst & Ernst v. United States District Court, 457 F.2d 1399 (5th Cir. 1972). The discovery proceedings developed since the filing of this suit reveal that only the transaction with the Bank of Louisville discussed below could give rise to plaintiff's contention that RIC was a purchaser of its own stock. Having considered the pleadings and all the discovery submitted to this court for examination as to the propriety of a class action, this court is of the opinion that Trustee has failed to establish federal jurisdiction under § 10(b) and Rule 10b–5 as to the Bank of Louisville transaction.

### 1. The Bank of Louisville Transaction

 The Bank of Louisville transaction involved the use of RIC stock as collateral for two loans each to South Atlantic Corporation (hereinafter "SAC") and RIC by the Bank of Louisville (hereinafter the "Bank") which was guaranteed by SAC. The RIC stock which was used as collateral was at all times owned by SAC who was the controlling shareholder of RIC. As a result of these loans, SAC agreed that RIC would not: (1) declare or pay dividends on its stock, (2) make material acquisitions or dispositions without approval of the Bank and (3) borrow money from or lend money to its subsidiaries, SAC or any of SAC's subsidiaries without the prior approval of the Bank. Subsequently, the loans were paid by RIC and the Bank released the RIC stock to SAC. The Trustee contends that the "use of RIC funds to free up the RIC stock pledged at the Bank of Louisville legally amounted to a purchase by RIC of its own stock."

### 2. The Purchaser Requirement

 Section 10(b) and Rule 10b–5 do not proscribe all fraudulent stock schemes but only those fraudulent schemes that are employed "in connection with the purchase or sale of any security." Herpich v. Wallace, 430 F.2d 792 (5th Cir. 1970). In short, Congress intended to afford investors a reasonable opportunity to make intelligent decisions regarding their purchases or sales of securities, and the economic loss resulting from a fraudulent scheme which deprives the investor of this reasonable opportunity is the type of injury section 10(b) and Rule 10b–5 seek to redress. SEC v. Texas Gulf Sulphur Co., 401 F.

2d 833 (2d Cir. 1968) (en banc). A purchaser or seller of securities must show an injury of the type that Rule 10b–5 was meant to prevent in order to establish jurisdiction under section 10(b).

In the Bank of Louisville transaction the RIC stock at all times was owned by SAC and held as collateral by the Bank for loans to RIC and SAC. When the loans were paid the RIC stock was released to SAC. There are no allegations that RIC as *an investor* was deprived of a reasonable opportunity to make a knowing, intelligent decision regarding the purchase or sale of RIC stock, or was deprived of any compensation for a sale of its stock. Superintendent of Ins. v. Banker Life and Casualty Co., 404 U. S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). RIC never purchased the stock in question nor did it anticipate the purchase of its own stock when it paid the loan.

The injury alleged by the Trustee to have been suffered by RIC by the Bank of Louisville transaction is that the Bank exercised control over the management of RIC as a result of the loan arrangement.[1] Though the Bank may have participated in the issuance of false and misleading statements when it controlled RIC, there has been no allegation of injury to RIC as an investor in its own stock from these misrepresentations. In conclusion, this court is of the opinion that the Trustee has failed to establish that RIC was a 10b–5 purchaser of its stock and thus the Trustee is not a member of the class of purchasers of RIC stock, which the Trustee seeks to represent.

Assuming *arguendo* that RIC is a 10b–5 purchaser, this court is of the opinion that the nature of RIC's purchase is not representative of the class of purchasers the Trustee seeks to represent as required by Rule 23. Any injury suffered by members of a class consisting of purchasers of RIC stock resulted from reliance on false and misleading information, while RIC's injury is substantially founded on corporate mismanagement by those defendants who controlled RIC. Additionally, any reliance by RIC on any misinformation is significantly different and untypical of the reliance by the class of purchasers of RIC stock the Trustee seeks to represent. Simon v. Merrill Lynch, 482 F.2d 880 (5th Cir. 1973); *see* III A., *infra*. Thus the "typicality" requirement in subdivision (a)(3) of Rule 23 has not been met.

### B. Potential Conflict of Interests

■■ This court is also of the opinion that the Trustee may not be an adequate representative of the proposed class in this case since the interests of the purported class may conflict with the interests of the Trustee. The Trustee is primarily responsible for working out a plan of reorganization for the benefit of RIC and its creditors. It has been well established that a bankruptcy trustee may not enter into an arrangement whereby "the subordinate rights and interests of the stockholders are . . . . secured at the expense of the prior rights of the creditors." Consolidated Rock Products Co. v. DuBois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982 (1940); Louisville Trust Co. v. Louisville, N.A. & C.R. Co., 174 U.S. 674, 19 S.Ct. 827, 43 L.Ed. 1130 (1899). If this case proceeds as a class action funds from the bankrupt estate would necessarily be expended on behalf of purchasers of RIC stock. No direct benefit

1. A transaction consisting solely of a transfer of a controlling block of RIC shares between SAC and Bank of Louisville cannot be reached in a 10b–5 action by RIC. Erling v. Powell, 429 F.2d 795 (8th Cir. 1970); Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.) cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1956).

would accrue to the bankrupt estate by the expenditure of these funds which would otherwise be distributed to creditors. Further, if a defendant in this suit desired to settle, a question would then arise as to distribution of the settlement proceeds as between the Trustee on behalf of the corporation and the class of defrauded shareholders. This same question and also other potential conflicts would arise if the trustee were permitted to represent the bankrupt RIC corporation and its creditors in a class action.[2]

## III. *The Intervenor's Claims*

### A. *Class Action Standards*

██ ██ Before a suit can proceed as a class action it must first be determined whether common issues of law and fact predominate over the individual questions. In this regard the critical test of a class action in a 10b–5 suit is whether there are material variations in the misrepresentations by the defendants and different degrees of reliance by the members of the class to whom the misrepresentations were directed. In Carlisle v. LTV Electrosystems, 54 F.R. D. 237 (N.D.Tex.1972), the court denied a class action because there were significant differences in the factual and legal positions of the individuals in the proposed class. In that suit stock and debenture buyers brought an action against a corporation and brokerage firm for alleged misrepresentations and omissions. The court held that in the absence of a showing that representations made by the corporation and the brokerage firms to the plaintiffs were substantially the same as those made to other members of the classes sought to be represented, it would not be proper to maintain the case as a class action. This view was also adopted in Simon v. Merrill Lynch, 482 F.2d 880 (5th Cir. 1973), where it was held that misrepresentations with material variations and which emanate from several sources cannot serve as a valid basis for a class action.[3]

### B. Marjorie Huxley Silver

An examination of the complaint in this case reveals allegations of numerous acquisitions, aborted acquisitions, "a couple of dozen" misleading press releases and false financial information which were all in furtherance of a multi-state scheme to misstate the value of RIC stock to those purchasers that the intervenor Majorie Huxley Silver seeks to represent. Ms. Silver has made three purchases of RIC stock, the first in September of 1969, the second in March of 1970 and the third in August of 1970. In her deposition she testified that her initial purchase of RIC stock was induced by a single newspaper article and a financial report from a commercial investing service. She also testified that she never read any reports or statements published directly by RIC. Her final purchase of stock was made on advice of her broker to average out her investment. Her first purchase was sold at a profit and her second and third purchases were made during the last six months of the four year period in which she seeks to represent all purchasers of RIC stock.

2. In Ernst & Ernst v. United States District Court, 457 F.2d 1399 (5th Cir. 1972), these potential conflicts were recognized when the district court was directed to designate an additional representative of the class to appear as plaintiff along with the Trustee. A designation of such representative in this case would appear to · be inconsistent with the prerequisites of Rule 23(a)(4), which requires that the class representative will fairly and adequately protect the interests of the class.

3. An allegation of price manipulation of stock does not establish a predominant question of law or fact common to all purchasers who may have purchased stock at a manipulated price over a period of time. Richland v. Cheatham, 272 F.Supp. 148 (S.D.N.Y. 1967).

It is clear that any claim Ms. Silver may have is against those defendants who participated in the issuance of particular press releases during the last six months of the four year period covered by the complaint. There is no evidence before this court that Ms. Silver's claim is representative of the alleged misrepresentations made at other times to other purchasers by other defendants. Further, the variations in the misrepresentations, the degree of reliance each purchaser placed on these misrepresentations and the various common law standards brought into issue due to the geographical dispersion of the misrepresentations, convinces this court that common issues of fact and law do not predominate over the individual claims of the purchasers of RIC stock and that a class action would not be an efficient method of adjudication in this case. Further, the deposition of Ms. Silver reveals that it is highly questionable whether she can adequately finance the prosecution of a class action as required in Eisen v. Carlisle & Jacquelin, 479 F. 2d 1005 (2d Cir. 1973) cert. granted October 15, 1973, 414 U.S. 908, 94 S.Ct. 235, 38 L.Ed.2d 146.[4]

IV. *Conclusion*

For the foregoing reasons it is therefore ordered that the motions to maintain this case as a class action are hereby denied.

Further, this court is of the opinion that an inquiry should now be made as to the existence of federal jurisdiction over the Trustee's claims. It is therefore ordered that any additional briefs in support of the motions to dismiss for lack of jurisdiction be filed by May 31, 1974, and that any reply briefs be filed by June 17, 1974.

4. Any use of funds from the bankrupt estate for the prosecution of claims of individual shareholders would appear to be an improper use of trust funds to the detriment of RIC's creditors.