**In re D.H. OVERMYER TELECASTING CO., INC., Debtor and Debtor-In-Possession.**

**FISHER, HECHT & FISHER, Plaintiff,**

**v.**

**D.H. OVERMYER TELECASTING CO., INC., Defendant.**

**Bankruptcy No. B81–00506.**
**Adv. No. B84–0366.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

Jan. 14, 1986.

Michael S. Feldberg, Shea & Gould, New York City, and Alan R. Lepene, Thompson, Hine & Flory, Cleveland, Ohio, for plaintiff.

John Silas Hopkins, III, Constance M. Iskin, John E. Sullivan, Baker & Hostetler, Cleveland, Ohio, for debtor-defendant.

## MEMORANDUM OF OPINION

JOHN F. RAY, Jr., Chief Judge.

This matter came on for hearing on the motion of Fisher, Hecht & Fisher ("FHF") to dismiss the second amended objection to claim and counterclaim of D.H. Overmyer Telecasting Co., Inc. ("Telecasting") to claim number 149 filed by FHF. In the alternative, FHF seeks to have this proceeding transferred to the United States Bankruptcy Court for the Southern District of New York. Counsel for FHF has submitted a memorandum, and FHF and Telecasting have orally argued in support of their respective positions.

FHF filed a proof of claim in this Court seeking compensation of $18,750.00 for services rendered as attorneys for the unsecured creditors' committee in Telecasting's Chapter XI case commenced in the Southern District of New York in late August, 1976, dismissed in February, 1981 and refiled in this Court as a Chapter 11 proceeding the same day it was dismissed in the Southern District of New York.

Telecasting's second amended counterclaim contains four counts, all of which arise from the same alleged conduct of FHF. Telecasting alleges that FHF aided Daniel H. Overmyer in defrauding Telecasting, by "packing" the creditors' committee in the Chapter XI case in the Southern District of New York. This Court found in *In re D.H. Overmyer Telecasting Co., Inc.*, 23 B.R. 823, 894 (Bankr.N.D.Ohio 1982), that Daniel H. Overmyer placed employees and subordinates on the creditors' committee, and thereby subverted the function of that committee. Telecasting's counterclaim alleges that FHF helped assemble this creditors' committee, actively participated in packing the committee and knowingly withheld from the New York Bankruptcy Court the information that the creditors' committee was improperly constituted.

Count I of Telecasting's second amended counterclaim alleges a breach of fiduciary duty to Telecasting and/or the bankruptcy estate; count II alleges malpractice by FHF; count III alleges that FHF aided and abetted Daniel H. Overmyer in defrauding Telecasting; and count IV alleges that FHF's claim is unfair and seeks equitable subordination of that claim.

Telecasting is foreclosed from making amendments to counts I, II and IV, since counts I, II and IV were dismissed by order of this Court dated March 28, 1985.

Examination of count III reveals that this claim belongs to unsecured creditors and the creditors' committee, not to Telecasting. Count III alleges that FHF deliberately concealed the composition of the committee from creditors, and that the failure to disclose the fact "misled" and "deceived" unsecured creditors who relied on

FHF and were "lulled" into a false sense of security. Telecasting claims that somehow it suffered injury as a result of the "packing" of the committee.

 It is well settled that a trustee in bankruptcy (herein, Telecasting)[1] lacks standing to assert the claims of creditors against third parties who are alleged to bear responsibility for a debtor's losses. Allegations that a representative of a class of creditors knowingly breached a duty to them and to the debtor, by aiding a debtor corporation's fraudulent transfers, are insufficient to give a bankruptcy trustee standing to sue on behalf of the allegedly defrauded creditors.

In *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), the Supreme Court held that a bankruptcy trustee lacked standing to assert the claims of creditors for losses to the debtor corporation. Caplin, the Chapter X trustee of Webb & Knapp, Inc., sued the indenture trustee of certain debentures for failing to disclose that Webb & Knapp, Inc. had submitted grossly inflated appraisals of real property, thus enabling it to misrepresent that it was in compliance with a covenant of the trust indenture which required maintenance of a 2:1 asset-to liability ratio. The Chapter X trustee alleged that the indenture trustee had knowingly permitted the debtor to engage in the transactions which resulted in impairment of the required asset-liability ratio, and that the debtor corporation thereby suffered substantial losses. 406 U.S. at 419–420, 92 S.Ct. at 1680–1681.[2]

 *Caplin* controls this case. Like the indenture trustee, FHF represented, through the committee, the interests of a specific class of creditors. Neither FHF

---

**1.** Although no trustee has been appointed in this action, it cannot be urged that Telecasting, as debtor-in-possession, has greater ability to bring suit than a trustee. *See* Section 1107 of the Bankruptcy Code, which grants the debtor-in-possession most of the rights of the trustee in bankruptcy, thereby implying that the debtor-in-possession's rights are even more circumscribed than the trustee's. *See also, In re Herman Cantor Corp.*, 22 B.R. 604, 697 (Bkrtcy.E.D.Va.1982).

**2.** As here, *Caplin* arose on a motion on which the validity of the trustee's allegations was not in issue. As noted by the court:

> These are merely allegations of petitioner, not findings of the lower courts. Because the District Court and the Court of Appeals held that petitioner had no standing, they had no occasion to consider the validity of the allegations.

*Id.* at 420, n. 10, 92 S.Ct. at 1681, n. 10.

nor the indenture trustee in Webb & Knapp had a fiduciary duty to the debtor corporation as opposed to the creditors they represented and with whom they were in privity.

The claim against FHF is the same as was asserted against the Webb & Knapp indenture trustee—permitting the debtor to engage in transactions which caused its assets to be squandered and which operated as a fraud on creditors. Moreover, the allegation made by Telecasting here ("By reason of the conduct of FHF Telecasting has suffered great damage.") is indistinguishable from that made in *Caplin* ("Webb & Knapp suffered great financial losses" as a result of the indenture trustee's tortious misconduct. *Id.* at 419–420, 92 S.Ct. at 1680–1681.)

Numerous cases decided in the wake of *Caplin* hold that allegations of misconduct and damage to the debtor corporation are insufficient to give the trustee standing to sue third parties on behalf of creditors.

In *Rochelle v. Marine Midland Grace Trust Company of New York*, 535 F.2d 523 (9th Cir.1976), the trustee was held to lack standing to assert a claim on behalf of allegedly defrauded debenture-holders and other creditors. As here, the trustee in *Rochelle* alleged that the defendants made misrepresentations which led to losses to the debtor corporation and its creditors. The Court there stated:

> The gist of Rochelle's action was that the defendants, through mismanagement, misrepresentations, and breaches of duties owed to the corporation and to the investing public, grossly overstated the net worth of Sunset and concealed its deteriorating financial condition, causing substantial losses to Sunset, its creditors, and debenture purchasers and holders
> . . . .
> We can quickly dispose of the claims that Rochelle purported to assert on behalf of Sunset's creditors and its debenture purchasers. The district court correctly dismissed this phase of the litigation because *Caplin v. Marine Midland Grace Trust Co.* (1972) 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195, held that a reorganization trustee has no standing to maintain the action on the part of any person or entity other than his debtor corporation.
> (*Accord: Clarke v. Chase National Bank*, 2d Cir.1943) 137 F.2d 797; *Warheit v. Osten* [E.D.Mich.1973] 57 F.R.D. 629.)

*Id.* at 526–527.

■ As stated by Second Circuit in *Clarke v. Chase National Bank*, 137 F.2d 797, 800 (2d Cir.1943), a case which is also indistinguishable, the trustee may not assert claims which belong to creditors and not to the bankrupt estate. The Court stated:

> They [the trustee's claims] at most would be a claim of the debenture-holders not derived from the bankrupt's estate but arising through the alleged tortious action of the indenture trustee.

In *King v. Sharp*, 63 F.R.D. 60 (N.D.Tex. 1974), a bankruptcy trustee alleged a scheme by the defendants to defraud the corporate debtor by having it acquire other companies at unfair or inflated prices. The court dismissed the trustee's claim for lack of standing under *Caplin,* stating:

> It is clear from *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), that a Chapter X Trustee under the Bankruptcy Act has no statutory authority to collect money on behalf of third parties. His authority is simply to collect and reduce to money the "property" of the bankrupt estate for which he is trustee. *McCandless v. Furland*, 296 U.S. 140, 56 S.Ct. 41, 80 L.Ed. 121 (1935). Further, a Chapter X Trustee is a legal entity created by law and can have no greater powers or rights than the law creates. Congress has not seen fit to endow a Chapter X Trustee with the freedom to champion causes that will produce benefits to third parties. If the bankrupt estate has no cause of action in its own right, then the Trustee has no authority to institute suits as a class representative or otherwise for the benefit of third parties.

*Id.* at 63.

Similarly, in *Matter of Washington Group, Inc.*, 476 F.Supp. 246 (M.D.N.C.

1979), *aff'd without opinion,* 636 F.2d 1213 (4th Cir.1980), *cert. denied,* 452 U.S. 940, 101 S.Ct. 3084, 69 L.Ed.2d 954 (1981), the court noted, as did the court in *Caplin,* that the trustee's authority has been carefully circumscribed by Congress, and that he does not have "broad license either to sue on behalf of or provide financial assistance to third parties with claims against the estate." *Id.* at 251. The court went on to state: "The rationale of the Court's holding in *Caplin* is unmistakable. The Trustee may only act for the direct benefit of the estate." *Id.* at 252.

The Supreme Court's analysis in *Caplin,* relied on and found to be controlling in many cases, is directly applicable to the instant facts.

The first test of Telecasting's standing to maintain count III is whether Telecasting could bring count III against FHF outside of bankruptcy. Clearly, it could not. *Caplin, supra,* 406 U.S. at 429, 92 S.Ct. at 1685 (trustee, like equity receiver, may assert claim corporation would have had prior to entering receivership.) *See Cissell v. American Home Assurance Co.,* 521 F.2d 790 (6th Cir.1975), *cert. denied,* 423 U.S. 1074, 96 S.Ct. 857, 47 L.Ed.2d 83 (1976); *King v. Sharp, supra,* at 63; *Schueler v. Phoenix Assurance Co. of N.Y.,* 223 F.Supp. 643 (E.D.Mich.1963) (unless the debtor had standing to sue, the trustee cannot succeed to rights debtor did not have and bring an action.)

State courts in both Ohio and New York have held that a reorganization trustee lacks standing to assert the claims of creditors against third parties who allegedly aided the bankrupt in diverting its assets. *See Friedman v. Myers,* 20 Ohio Cir. Dec. 303 (Cuyahoga Cir.1907); *Barnes v. Schatzkin, et al.,* 215 A.D. 10, 212 N.Y.S. 536 (1st Dep't 1925), *aff'd,* 242 N.Y. 555, 152 N.E. 424 (1926).

It is long settled that a trustee in bankruptcy, like a receiver in equity, occupies no better position than the entity he repre-

sents, and can only assert claims which the corporation could have asserted. *Caplin, supra,* 406 U.S. at 429, 92 S.Ct. at 1685; 6A *Collier on Bankruptcy* (rev. ed.) ¶ 8.08. *Bovay v. H.M. Byllesby & Co.,* 26 Del.Ch. 69, 78, 22 A.2d 138, 142 (1941); 16 Fletcher, *Cyclopedia of Corporation,* § 7847 at 463 (1962 ed.).

That count III belongs, if to anyone, to Telecasting's creditors, and not to Telecasting, is indeed manifest from this court's decision in *In re D.H. Overmyer Telecasting Co., Inc.,* 23 B.R. 823 (N.D.Ohio, 1982). As this Court stated: "Mr. Overmyer ... transferred money out of Telecasting with the actual intent to hinder and delay the claim of FNBB and other creditors." *Id.* at 922.[3]

Telecasting's lack of standing to assert count III is practically conceded. In FNBB's motion to intervene, counsel for FNBB (who also represent Telecasting) stated that FNBB sought to intervene to insure the presence of a party with standing to prosecute these claims.

FNBB's statement that Telecasting lacks standing to allege that it was defrauded by Daniel H. Overmyer is entirely apt. In *Barnes v. Schatzkin, supra,* 212 N.Y.S. at 539, the court held that debtor's participation in the alleged frauds precluded its trustees from suing alleged third party co-conspirators. The court stated: "The bankrupts could not recover against these defendants for bucketing orders because they were responsible for the illegal transaction and parties to the fraud." *Accord, Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449 (7th Cir.1982) (Corporation could not bring suit against professionals for aiding and abetting fraud by those in control of corporation.)

In *Caplin,* the court found that:

[S]uit by [the debtor-in-possession] on behalf of debenture holders may be inconsistent with any independent actions that they might bring themselves ... indepen-

---

**3.** To like effect is the holding: "All of the various obligations and payments incurred by Telecasting to other Overmyer companies after the filing of the Telecasting XI were incurred with actual intent to defraud FNBB." *Id.* at 887.

dent actions are still likely because it is extremely doubtful that the trustee and all debenture holders would agree on the amount of damages to seek, or even on the theory on which to sue.

*Id.* 406 U.S. at 431–432, 92 S.Ct. at 1686–1687.

Telecasting has already attempted, unsuccessfully, to assert claims for malpractice and breach of fiduciary duty against FHF on behalf of creditors. While Telecasting's unsecured creditors would unquestionably be better off pursuing claims for negligence where *scienter* need not be proved, Telecasting would expend assets of the estate to pursue a fraud claim with all of its attendant obstacles. As noted in *Caplin*, such a conflict of interest cannot be tolerated: "The trustee may well have interests that differ from those of the bondholders ... The conflict may at times be unfavorable to the debenture holders ... In such a case the debenture holders might regret placing their confidence in the trustee." *Id.* at 432, n. 21, 92 S.Ct. at 1687, n. 21; *See also, Id.* at 432, n. 22, 92 S.Ct. at 1687, n. 22.

There can be little doubt that the interests of Telecasting, FNBB and unsecured creditors are, and always have been, in conflict. Telecasting is presently controlled by FNBB, its sole equity holder. FNBB also claims to be Telecasting's principal creditor.

To the extent that Telecasting would be willing to compromise this action at the point where only FNBB's claims are satisfied, it would be to the detriment of the unsecured creditors FHF was retained to represent. *See also, King v. Sharp, supra,* at 64.

If FHF defeats count III, unsecured creditors who are not parties to the action would not be bound by that judgment and could sue FHF on the same claim, as well

as on claims sounding in negligence and breach of fiduciary duty.

In *Caplin*, the Supreme Court viewed these prospects of multiple conflicts of interest as strongly militating against the trustee's standing:

Moreover, if the indenture trustee wins the suit brought by the trustee in reorganization, unless the debenture holders are bound by that victory, the proliferation of litigation that petitioner seeks to avoid would then ensue. Finally, a question would arise as to who was bound by any settlement.

*Id.* at 432, 92 S.Ct. at 1687.

Similarly, as the Supreme Court observed, the degree of damage suffered by creditors was impossible to determine in the trustee's action:

In other words, debenture holders will not be able to recover damages from the indenture trustee until the reorganization is far enough along so that a reasonable approximation can be made as to the extent of their losses, if any. It is difficult to see precisely why it is at that point that the trustee in reorganization should represent the interests of the debenture holders, who are capable of deciding for themselves whether or not it is worthwhile to seek to recoup whatever losses they may have suffered by an action against the indenture trustee.

*Id.,* at 431, 92 S.Ct. at 1686; *see also, Clarke, supra,* at 800.

■ These concerns, as articulated by the Supreme Court, dovetail with the fundamental principle that every action be prosecuted in the name of the real party in interest.[4] To be the real party in interest, the plaintiff must possess the right to maintain the action under the applicable substantive law, for only then will it be bound by any final judgment or compromise.

---

**4.** Fed.R.Civ.P. 17(a), made applicable by Bankruptcy Rule 7017, provides, in pertinent part, that: "Every action shall be prosecuted in the name of the real party in interest." In *Clarke, supra,* at 800, the Second Circuit dismissed the trustee's action on the additional ground that he "was not the real party in interest by whom such claims should be asserted under Rule 17(a) of the Rules of Civil Procedure."

Only if the action has been instituted by the party possessing the right to relief under the applicable substantive law will it qualify as the real party in interest. *American National Bank & Trust Co. v. Weyerhaeuser,* 692 F.2d 455 (7th Cir.1982); Wright & Miller, Federal Procedure, §§ 1543, 1544.

The purpose of the real party in interest rule "is to protect individuals from the harassment of suits by persons who do not have the power to make final and binding decisions concerning prosecution, compromise and settlement (citations omitted)." *Kenrich Corporation v. Miller,* 256 F.Supp. 15, 17 (E.D.Pa.1966), *aff'd,* 377 F.2d 312 (3d Cir.1967).

Telecasting lacks the power to bind its unsecured creditors to any result reached in this litigation. A judgment in its favor would not prevent creditors from suing FHF for the same alleged misconduct. As stated in *Sigma Engineering Service, Inc. v. Halm Instrument Co., Inc.,* 33 F.R.D. 129, 130 (E.D.N.Y.1963):

> The purpose of the rule "is to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party at interest on the same matter." *Celanese Corp. of America v. John Clark Industries, Inc.,* 5 Cir.1954, 214 F.2d 551, 556.

All that Telecasting alleges is that FHF misled creditors and the court as to its relationship with Daniel H. Overmyer. If unsecured creditors were misled, then it is they who must sue; without their presence, FHF cannot obtain the *res judicata* consequences to which it is entitled upon settlement or a trial on the merits. *See Caplin, supra,* 406 U.S. at 432, 92 S.Ct. at 1687 (creditors not bound by judgment or settlement).

 Telecasting is without standing or power to maintain this action against FHF. Telecasting's allegations of fraud and injury against FHF are indistinguishable from those made by bankruptcy trustees in the numerous cases where standing has been denied. Telecasting may not sue on a claim which does not belong to the bankrupt estate. Moreover, if Telecasting is permitted to maintain this suit, FHF may be subjected to multiple liability from general unsecured creditors. The damage to these creditors from the conduct alleged, if any, cannot be determined in this action. Count III should be dismissed because Telecasting lacks standing to assert such a claim.