Maurice BAEHR, Sr., Trustee

v.

TOUCHE ROSS & CO.

No. 85–0709.

United States District Court,
E.D. Pennsylvania.

June 24, 1986.

Michael H. Kaliner, David S. Fishbone, Philadelphia, Pa., for plaintiff.

Michael M. Baylson, Philadelphia, Pa., for defendant.

1. PMT is a Massachusetts business trust.

Andrew Kassner, Philadelphia, Pa., for Philadelphia Mortg. Trust Shareholders (Non-Party.)

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is defendant Touche Ross & Co.'s motion to dismiss plaintiff Maurice Baehr, Sr., Trustee's complaint for failure to state a claim upon which relief can be granted. Plaintiff, answering defendant's motion, has requested that, if the court grants defendant's motion, the court allow plaintiff to amend his complaint. For the reasons stated herein, defendant's motion will be granted in part and denied in part. Plaintiff's motion to amend will be denied as premature. *See* Fed.R.Civ.P. 15(a).

FACTS

The Philadelphia Mortgage Trust ("PMT") was a publicly held real estate investment trust [1] until it filed bankruptcy [2] in the United States Bankruptcy Court for the Eastern District of Pennsylvania on September 7, 1983. Shortly after that date, on September 16, 1983, plaintiff Maurice Baehr, Sr. was appointed trustee in bankruptcy.

Defendant Touche Ross & Co. audited PMT's financial statements for the three successive years ending September 30, 1980, September 30, 1981, and September 30, 1982. The audits were conducted by defendant under the following understanding:

Our examination will be conducted in accordance with generally accepted auditing standards which will include a review of the system of internal control and tests of transactions to the extent we believe necessary. Accordingly, it will not include detailed audits of transactions to the extent which would be required if intended to disclose defalcations or other irregularities, although their discovery may result.

2. PMT filed for bankruptcy under Chapter 11 of the United States Bankruptcy Act.

The objective of our examination is the expression of an opinion on the aforementioned financial statements. The ability to express that opinion, and the wording of our opinion will, of course, be dependent on the facts and circumstances at the date of our report. If in any case our opinion will be other than unqualified, the reasons therefor will be fully disclosed.

We direct your attention to the fact that management has the responsibility for the proper recording of transactions in the books of account, for the safeguarding of assets, and for the substantial accuracy of the financial statements. Such statements are the representations of management.

Letters from defendant to PMI, dated October 23, 1980, August 17, 1981, and August 20, 1982. After completing an audit of financial statements for each year, defendant issued an unqualified accountant's opinion.[3]

During fiscal years 1980, 1981, and 1982, over 50% of PMT's assets were invested in a pool of securities. These securities ("GNMAs") were issued by Leedy Mortgage Company, Inc. ("Leedy"), secured by mortgages pledged by Leedy, and backed by the Government National Mortgage Association under the provisions of the National Housing Act. Leedy placed the mortgages which backed its GNMAs into a trust account. In placing these mortgages in trust, Leedy accounted for the mortgages as sales of related mortgages. Thus, the GNMAs and the related mortgages were not included on Leedy's balance sheets as assets and liabilities. The

GNMAs and related mortgages were merely noted as a contingent liability in note 8 of Leedy's April 30, 1982 financial statements.

Leedy's April 30, 1979, April 30, 1980, and April 30, 1981 financial statements were audited by the accounting firm of Ridley & Schweigert. Leedy's April 30, 1982 financial statements were audited by other accountants, Jamison, Money, Farmer & Company. The auditors found no irregularities in Leedy's financial position and gave unqualified opinions. The auditors did not represent, however, that they audited the mortgage trust.

In 1980, 1981, 1982, and 1983, the outstanding GNMAs, for which Leedy was contingently liable, became much greater than the mortgages held in trust and the government guarantees backing the GNMAs.[4] Leedy was unable to meet its obligation to pay the GNMAs and filed for bankruptcy on September 7, 1983. The amount of mortgages and government guarantees backing the GNMAs were insufficient to reimburse the holders of the GNMA securities. PMT, having a substantial proportion of its assets invested in Leedy's GNMAs, was not able to recover from this setback and filed for bankruptcy.

In 1980, 1981, 1982, and 1983, Richard Micheel ("Micheel") was the president of both Leedy and PMT, a controlling shareholder of PMT, and the principle decisionmaker of the trust. Micheel has since been convicted of fraud and is presently incarcerated in a federal prison.

In the instant complaint plaintiff asserts three causes of action against defendant. In Count I, plaintiff alleges that defendant

---

**3.** The opinion letters stated, in pertinent part: We have examined the balance sheets of Philadelphia Mortgage Trust as of [the year] and the related statements of operations, shareholders' equity and changes in financial position for the years then ended. Our examinations were made in accordance with generally accepted auditing standards and, accordingly, included such tests of the accounting records and such other auditing procedures as we considered necessary in the circumstances. In our opinion, the financial statements referred to above present fairly the financial

position of Philadelphia Mortgage Trust at [the year-end date], and the results of its operations and the changes in its financial position for the years then ended, in conformity with generally accepted accounting principles applied on a consistent basis. Opinion Letters, dated December 5, 1980, December 18, 1981, and November 18, 1982.

**4.** The record does not reflect how or why the collateral held in trust disappeared or how or why the government guarantees became insufficient to reimburse the GNMA holders.

breached its contract with PMT because defendant rendered an unqualified opinion of PMT's financial condition even though defendant never audited the assets held in the trust and defendant should have known that no one had audited those assets. Plaintiff contends also that defendant breached its contract because defendant did not send PMT a letter warning PMT of the lack of its internal controls. In Count II, plaintiff asserts a claim on behalf of PMT for accountant malpractice. In Count III, plaintiff makes a claim on behalf of PMT's creditors and shareholders for accountant malpractice.

On January 6, 1986, defendant moved to dismiss plaintiff's complaint.

## DISCUSSION

### A. *Count I*

■ Defendant argues that Count I of plaintiff's complaint should be dismissed because PMT's creditors and shareholders, not PMT, were the real parties in interest. In making this argument, defendant reads the complaint and construes the evidence as demonstrating that PMT was a party to the fraud. Defendant believes that PMT was merely a conduit through which Micheel, Leedy, and the trust perpetrated fraud upon PMT's creditors and shareholders.

Defendant argues also that Count I should be dismissed because plaintiff has failed to allege and demonstrate that defendant's conduct caused plaintiff's loss.

The court disagrees. The court believes that reading the complaint and construing the facts as it must on this motion, in the light most favorable to plaintiff, PMT was an innocent victim of the fraud perpetrated by Micheel, Leedy, and the trust.[5] Additionally, the court finds that plaintiff has alleged and demonstrated sufficiently to defeat defendant's motion that PMT, relying on defendant's audit and unqualified opinion, thought that its financial condition was sound, made decisions in its day-to-day

operations, and did not consider instituting suit for fraud when Micheel, Leedy, and the trust were solvent. Plaintiff avers that if PMT had instituted timely suit, it would have stopped the fraud scheme in time to avert bankruptcy.

Defendant also asserts that it audited the GNMAs and related mortgages. In support of its assertion, defendant attaches the affidavit of Gerard J. Davis ("Davis"). Davis, a partner in defendant, conducted the audit of the trust. Plaintiff counters defendant's argument by submitting an affidavit of his expert accountant, George L. Miller ("Miller").

■ In coming to his opinion, Miller did not see all of defendant's work papers. Nevertheless, the court believes that a genuine issue of material fact exists and that it should not grant defendant's motion for two reasons. First, where defendant moves for summary judgment and defendant has information which plaintiff needs to oppose defendant's motion, Rule 56(f) of the Federal Rules of Civil Procedure permits the court to deny defendant's motion. Here, defendant has work papers which plaintiff needs to oppose defendant's motion. Defendant's motion must be denied at this time. Second, and more importantly, Miller testified that, if defendant had audited PMT using generally accepted accounting principles, defendant would have discovered the fraud. If the jury believed Miller, the jury could find that defendant's audit was inadequate and was not in accord with generally accepted accounting principles.

For these reasons, with respect to Count I, the court must deny defendant's motion.

### B. *Count II*

Defendant argues that Count II, plaintiff's claim on behalf of PMT for negligence, is barred by the statute of limitations, 11 U.S.C. § 108(a).

---

5. Under plaintiff's version of the facts here, PMT is not a party to the fraud or the vehicle by which the fraud was conducted. Thus, this case is distinguishable from *Cenco, Inc. v. Seidman &* *Seidman,* 686 F.2d 449 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982).

Title 11 of the United States Code, § 108(a) provides, in pertinent part, as follows:

If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

Plaintiff does not dispute that if the court were to apply the two year statute of limitations provided in 11 U.S.C. § 108(a)(2), plaintiff's claim would be barred. The Order for relief was filed on September 7, 1983, and plaintiff's complaint was filed on September 13, 1985, six days after the last day permitted by the statute.

Plaintiff, however, suggests that the court should apply Pennsylvania's six year statute of limitations for contract actions because plaintiff's claim for professional malpractice arises from a contractual relationship between plaintiff and defendant. 42 Pa.Cons.Stat.Ann. § 5527.[6] If the six year statute of limitations were applied, plaintiff's complaint would be timely. Plaintiff argues, in the alternative, that even if the state's two year statute of limitations applicable to actions in negligence, 42 Pa.Cons.Stat.Ann. § 5524,[7] were applied, plaintiff's claim was timely because the statute was tolled until plaintiff had a reasonable opportunity to discover defendant's negligence.

■■■ The court believes that the six year statute of limitations should be applied to plaintiff's contract claim, Count I, and the two year statute of limitations should be applied to the malpractice claim, Count II. Plaintiff has not cited any cases in any state where a state's six year statute of limitations for contract actions has been applied to a professional malpractice claim. The plain language of the two year statute directs the court to apply the two year statute to a claim for property loss caused by defendant's negligence.

■■■ The court turns to plaintiff's argument that the statute of limitations was tolled. The record reflects that for many years before PMT filed for bankruptcy, defendant audited PMT's financial statements and rendered unqualified opinions. Throughout that period, PMT knew the extent to which defendant audited PMT and that defendant had given unqualified opinions. When PMT filed for bankruptcy on September 7, 1983, PMT knew that the GNMAs were not adequately backed by mortgages and governmental guarantees. Consequently, PMT had to know before September 7, 1983, whether it had a claim against defendant. Therefore, on or before September 7, 1983, the statute began to run. The action was not brought against defendant until September 13, 1985, over two years after the two year statute of limitations had begun to run. Accordingly, Count II is barred by the statute of limitations.

---

6. Title 42 Pa.Con.Stat.Ann. § 5527 provides as follows:

Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 1531 (relating to no limitation) must be commenced within six years.

7. Title 42 Pa.Con.Stat.Ann. § 5524 provides, in pertinent part:

The following actions and proceedings must be commenced within two years:

. . . . .

(3) An action for taking, detaining or injuring personal property, including actions for specific recovery thereof.

. . . .

(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

### C. *Count III*

█ Plaintiff brings Count III on behalf of PMT's creditors and shareholders. Plaintiff asserts that he has standing to assert Count III because of 11 U.S.C. § 544(a). He cites *In re Overmyer Telecasting Co., Inc.,* 56 B.R. 657 (Bankr. N.D. Ohio 1986) and *Caplin, Trustee v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972).

The court does not believe that plaintiff has standing to assert Count III. Plaintiff is not asserting the rights and powers of the debtor. Plaintiff is not trying to avoid the transfer of property of the debtor. He is not trying to avoid any obligation incurred by the debtor that is voidable by any of the three parties listed in 11 U.S.C. § 544(a).

Instead, plaintiff is attempting to assert the rights and powers of creditors and shareholders. This is not permitted by 11 U.S.C. § 544.[8] To allow plaintiff to proceed with Count III, the court would have to blatantly misapply the clear, unambiguous language of 11 U.S.C. § 544 which the court, of course, declines to do. In addition, the court notes that *In re Overmyer Telecasting Co., Inc.,* 56 B.R. 657 (Bankr. N.D. Ohio 1986) and *Caplin, Trustee v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) support defendant's position and do not support plaintiff's argument. *See also, Melamed v. Lake County National Bank,* 727 F.2d 1399 (6th Cir.1984). The court holds that plaintiff does not have standing to assert Count III.

---

**8.** Title 11 U.S.C. § 544 provides, in pertinent part, as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser and has perfected such transfer exists.

## CONCLUSION

Accordingly, defendant's motion with respect to Count I will be denied, and with respect to Count II defendant's motion will be granted.

An appropriate Order will be entered.

## ORDER

AND NOW, TO WIT, this 24th day of June, 1986, for the reasons stated in the accompanying Memorandum, IT IS ORDERED as follows:

1. Defendant Touche Ross & Co.'s motion to dismiss with respect to Count I is *denied;*

2. Defendant Touche Ross & Co.'s motion to dismiss with respect to Counts II and III is *granted;* and

3. Plaintiff Maurice Baehr, Sr., Trustee's motion to amend his complaint is *denied.*