**In re BELL & BECKWITH, Debtor.**

No. C 87–7536.

United States District Court,
N.D. Ohio, W.D.

Dec. 10, 1987.

Richard Wolff, Toledo, Ohio, for McKennys.

Joel Wolosky, Parker, Chapin, Flattau, New York City, for Todman.

Stephen P. Harbeck, Washington, D.C., for SIPC.

Philip R. Joelson, Toledo, Ohio, for J. Robert Jesionowski.

Fuller & Henry, Toledo, Ohio, for Trustee.

Julius Poppinga, McCarter & English, Newark, N.J., for Richard Hill.

James A. Hofelich, Cleveland, Ohio, for Partners.

David C. Wicklund, Toledo, Ohio, for Todd & Thompson.

## MEMORANDUM AND ORDER

WALINSKI, Senior District Judge.

This matter is before the Court on Charles A. and Mary L. McKenny's ("McKennys") appeal from the bankruptcy court's order approving a proposed settlement agreement between Patrick A. McGraw ("McGraw"), Trustee of Bell & Beckwith ("Trustee"), and the accounting firm of Fredrick S. Todman & Company and its partners ("Todman"). The McKennys request oral argument on the appeal. This Court's appellate jurisdiction rests on 28 U.S.C. § 158(a).

### FACTS

Bell & Beckwith, the debtor, was a stock brokerage located in Toledo, Ohio. Prior to the commencement of Bell & Beckwith's liquidation proceedings, the McKennys maintained personal accounts at Bell & Beckwith with a total net equity of over $7,000,000.00.

Beginning in 1973, Edward P. Wolfram, Jr. ("Wolfram"), the managing partner of Bell & Beckwith, began diverting cash and securities held by Bell & Beckwith from

certain customer margin accounts into his own. Between 1973 and February of 1983, when Wolfram's scheme was discovered and Bell & Beckwith went into liquidation, Wolfram stole approximately, $46,000,-000.00 in cash and securities.

From 1977 to 1982, Bell & Beckwith engaged Todman to perform independent audits of the brokerage. Although Wolfram's diversions continued to increase from 1977 through 1982, Todman apparently failed to detect the fraudulent transfers.

Liquidation proceedings under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. § 78aaa, *et seq.*, were commenced against Bell & Beckwith in February, 1983. Shortly thereafter, a number of lawsuits were filed against Todman by various parties including the Trustee and the McKennys. The bases for these actions include, *inter alia,* allegations of accountant malpractice in the preparation and publishing of Bell & Beckwith's annual financial reports. The Trustee sought and received a stay of all actions against Todman which stemmed from its audits of Bell & Beckwith and except for limited proceedings, these other actions have remained stayed since that time. The only suit which has progressed is that filed by the Trustee.

After the Trustee's suit against Todman began, yet another brokerage firm audited by Todman, Bevill, Bressler & Schulman, Inc. ("BBS, Inc."), went into liquidation. An affiliate of BBS, Inc., Bevill, Bressler & Schulman Asset Management Corporation ("AMC"), became insolvent at the same time. In July of 1986, the BBS, Inc. trustee filed suit against Todman. The BBS, Inc. trustee claimed damages in excess of $600,000,000.00 allegedly caused by Todman's professional malpractice.

The Trustee determined that Todman's professional liability insurance policies provide a total of only $10,000,000.00 coverage. In order to reduce the uncertainty of litigation and insure that the Bell & Beckwith estate would receive a portion of the insurance proceeds, the Trustee entered into a settlement agreement with Todman ("Settlement Agreement") and a trustee's agreement with the trustees of BBS, Inc. and AMC. The Settlement Agreement, dated April 15, 1987, states that the Trustee will receive $5,187,500.00 in exchange for releasing any and all claims the Trustee has or had against Todman. Todman apparently believed that the Trustee's release would include the claims brought by the McKennys and others.

On April 16, 1987, the Trustee moved for the bankruptcy court to approve the Settlement Agreement. The McKennys objected to the proposed Settlement Agreement on the grounds that 1) the Trustee lacked standing to release their personal claims against Todman and 2) the Settlement Agreement was unfair and unreasonable because it sought to release the McKennys' claims. Various partners of Bell & Beckwith objected on similar grounds.

The bankruptcy court held a hearing on the proposed Settlement Agreement on June 24, 1987. At the hearing, the Trustee testified that he was only seeking to release those claims he had standing to bring on behalf of the bankruptcy estate. Todman asserted, however, that the Trustee's release would preclude the McKennys' and others from maintaining their "personal" actions against Todman.

On July 7, 1987, the bankruptcy court overruled all objections and approved the Settlement Agreement. In approving the Settlement Agreement, the bankruptcy court ruled that it was not necessary for it to decide the issue of whether the Settlement Agreement would preclude the objectors' individual actions against Todman. The court determined that the resolution of that issue 1) should be made in the courts where the individual actions were pending and 2) would not affect the overall fairness of the Settlement Agreement. The bankruptcy court concluded that "the settlement is in the best interest of the estate" whether or not the objectors would be precluded from maintaining their individual actions against Todman. *In re Bell & Beckwith,* 77 B.R. 606, 616 (Bkrtcy.N.D.Ohio 1987).

The McKennys now appeal the bankruptcy court's approval of the Settlement

Agreement. The McKennys appeal on the related, if not overlapping, grounds that the bankruptcy court erred 1) in not considering the preclusive effect the Settlement Agreement would have on their claims against Todman; 2) in determining that it did not need to consider the Trustee's standing to release their claims; and 3) in approving the Settlement Agreement without considering the effect it would have on the McKennys.

## DISCUSSION

Under Bankruptcy Rule 8013, the district court may affirm, modify, reverse, or remand with instructions a bankruptcy court's decision. A district court may not set aside a bankruptcy court's findings of fact unless they are clearly erroneous. *In re White Motor Credit Corp.*, 27 B.R. 554, 556 (N.D.Ohio 1982). The bankruptcy court's conclusions of law, however, are freely reviewable on appeal. *In re Tenna Corp.*, 53 B.R. 493, 494 (N.D.Ohio 1984).

■■■ The decision of whether to approve a trustee's proposed settlement lies within the sound discretion of the bankruptcy court and will only be disturbed or set aside if such discretion is abused. *In re Albert–Harris, Inc.*, 313 F.2d 447, 449 (6th Cir.1963). In deciding whether to approve a proposed settlement, the bankruptcy court must determine whether the settlement is in the best interest of the estate. *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D.Pa.1986).

In evaluating whether a proposed settlement agreement is in the best interest of the estate, the bankruptcy court should consider:

1) the probability of success in litigation; 2) the difficulties, if any to be encountered in collecting any judgments that might be rendered; 3) the complexity of the litigation involved, as well as the expense, inconvenience and delay neces-

sarily attendant to the litigation; and 4) the paramount interests of creditors with proper deference to their reasonable views.

*In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir.1986).

■■ The trustee has the burden of persuasion that the settlement is in the best interest of the estate. *In re Hermitage Inn, Inc.*, 66 B.R. 71, 72 (Bkrtcy.D.Colo. 1986). While the court should not substitute its judgment for that of the trustee, it must "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.), *cert. denied sub nom. Cosoff v. Rodman*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983), *quoting, Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied sub nom. Benson v. Newman*, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972). *See, e.g., In re Mobile Air Drilling Co., Inc.*, 53 B.R. 605, 608 (Bkrtcy.N.D.Ohio 1985).

In considering a proposed settlement, the bankruptcy court is not resolving issues. The court is merely identifying and clarifying issues so that it can make an informed decision on the reasonableness of the settlement. *In re Carla Leather, Inc.*, 44 B.R. 457, 470 (Bkrtcy.S.D.N.Y.1984), *aff'd*, 50 B.R. 764 (S.D.N.Y.1985).

In the present case, the McKennys appeal the bankruptcy court's approval of the Settlement Agreement on various grounds. The McKennys' basic objection is that the bankruptcy court approved the proposed Settlement Agreement without determining whether the McKennys' claims against Todman would survive. The McKennys maintain that the court "failed to apprise itself of all facts necessary to make an 'informed and independent judgment,' as mandated under relevant authorities." (McKennys' Substitute Brief at 12).[1]

---

1. The McKennys also claim that the Trustee attempted "to settle, release and dismiss claims belonging to the McKennys" and that such a result would render the Settlement "substantively unreasonable and unfair." (McKennys' Substitute Brief at 42). There is simply no evidence, however, that the Trustee attempted to

overstep his authority. The Trustee has stated throughout the settlement proceedings that he intended to release only those claims which he had the right to bring under federal law. The trustee did not try to surreptitiously compromise the McKennys' claims. Even if he attempted to, he has no right to and his attempt would

The McKennys' standing, or lack thereof, to continue their claims against Todman is, of course, relevant to the fairness and reasonableness of the Settlement Agreement. Not only does it affect "the paramount interests" of the McKennys, it also affects the consideration which Todman will receive from the Trustee. However, in the present case, the bankruptcy court did not err in refusing to resolve the question of the McKennys' standing because other factors compelled approval of the Settlement Agreement.

Perhaps the most important reason behind the bankruptcy court's approval of the Settlement Agreement is that Todman's assets and insurance coverage are limited and are probably insufficient to cover Todman's potential liabilities. Besides the Trustee's suit, two other bankruptcy trustees have suits pending against Todman. The damages claimed in the other suits exceeds $600,000,000.00 and Todman's malpractice insurance will cover only $10,000,000.00 of liability. Rather than face the risks and expenses of going to trial against Todman, the trustees decided to split the insurance money according to their relative claims and efforts already expended. Although the trustees could attempt to force Todman into bankruptcy in order to maximize their recoveries, the costs of such litigation could easily exceed any additional amounts they may recover. Also, Todman's assets could be further depleted by other possible lawsuits. As the bankruptcy court stated, "[w]hile [another major lawsuit] may seem a remote possibility, it must be remembered that, at one time, the failure of a *second* brokerage audited by Todman seemed only a remote possibility." *In re Bell & Beckwith,* 77 B.R. 606, 615 (Bkrtcy. N.D.Ohio 1987).

In addition, the bankruptcy court did not err in refusing to resolve the question of the McKennys' standing because such a determination would be mere *dicta.* The district court where the McKennys' action is pending has the exclusive power to allow or disallow their action. While this Court believes that it is possible for a creditor or customer of a brokerage to maintain an independent cause of action for accountant malpractice,[2] such a determination by the bankruptcy court here would not bind the district court and would be ineffectual. Therefore, this Court cannot say that the bankruptcy court, faced with the above considerations, abused its discretion in approving the Settlement Agreement.

The McKennys further contend that the bankruptcy court should not have approved the Settlement Agreement when the parties themselves could not agree on its meaning. The bankruptcy court in *In re Neshaminy Office Bldg. Assocs.,* 75 B.R. 937 (Bkrtcy.E.D.Pa.1987), considered such a question and determined that it could not approve a settlement when the parties could not agree on how the settlement affected the trustee's rights under a prior contract. The bankruptcy court stated that "it is not clear whether, under the [settlement] agreement, the trustee is surrendering the debtors' rights under ... the [prior contract]." *Id.* at 942.

In *In re Neshaminy,* an ambiguity arose over the rights the trustee would retain after the settlement. Here, it is undisputed that the Trustee will not retain any causes of action arising out of the Bell & Beckwith liquidation against Todman. The court in *In re Neshaminy* refused to approve the settlement because the *parties* could not agree on what effect it would have on *their* rights against *each other.* Such is not the case here. Therefore, the rationale of *In re Neshaminy* is inapplicable.

In the case *sub judice,* any ambiguity as to the claims the Trustee is releasing arises

---

not affect the McKennys' right to maintain their suit against Todman.

**2.** *See, e.g., In re Bell & Beckwith,* 64 B.R. 144, 146 (Bkrtcy.N.D.Ohio 1986) (only a trustee may bring an accountant malpractice action arising from a debtor's relationship with the accountants, but the debtor's partners may bring causes of action "which would not interfere with those belonging to the debtor's estate"); *Baehr v. Touche Ross & Co.,* 62 B.R. 793, 798 (E.D.Pa. 1986) (a bankruptcy trustee does not have standing to bring a claim for accountant malpractice on behalf of a real estate investment trust's creditors and shareholders).

not so much from the Settlement Agreement proposed by the Trustee, but from the McKennys' and Todman's interpretation of the law. To the extent that the McKennys' claims against Todman are "personal" in nature, the Settlement Agreement does not affect them. If they are not personal, then they are claims which belong to the bankruptcy estate generally and which the Trustee has every right to settle. The determination will be made inapplicable by the court where the McKennys' action is pending. Whatever the court decides will not detract from the informed judgment of the bankruptcy court nor destroy the fairness of the Settlement Agreement.

For the foregoing reasons, this Court finds that the bankruptcy court did not abuse its discretion in approving the Settlement Agreement. Furthermore, the bankruptcy court did not err in declining to determine whether the Settlement Agreement will preclude the McKennys' claims against Todman.

It is therefore,

ORDERED that the bankruptcy court's approval of the Settlement Agreement is AFFIRMED.

FURTHER ORDERED that the McKennys motion for leave to present oral argument is denied.