**In re BELL & BECKWITH, Debtor.**

**Roy CLAYBORNE, et al., Plaintiffs,**

**v.**

**Patrick A. McGRAW, Trustee, et al., Defendants.**

**Bankruptcy No. 83–0569.
Related Case 83–0132.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

June 6, 1984.

Marvin K. Jacobs, Toledo, Ohio, for plaintiffs.

Fuller & Henry, Toledo, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before this Court upon the Complaint to Determine if Property is subject to Stay, and if so, Relief From Stay. The parties have agreed that the issues raised by the Complaint would be submitted to the Court in the form of written argument. Each of the parties have filed their arguments and has had the opportunity to respond to the arguments raised by opposing counsel. The Court has reviewed the record and for the following reasons finds that a limited Relief From Stay should be GRANTED.

## FACTS

The facts of this case do not appear to be in dispute. The Defendant is the Trustee for the liquidation of the Debtor-brokerage pursuant to the provisions of 15 U.S.C. § 78aaa et seq. The customers of the brokerage were declared in need of protection

by the United States District Court, Northern District of Ohio, Western Division, as the result of the fraudulent activities conducted by Edward P. Wolfram, the managing partner of the brokerage. These activities, which were conducted over a period of approximately ten years, included the diversion of customer funds into brokerage accounts that were controlled by Wolfram.

During the time that Wolfram's activities went undiscovered, he used the diverted funds to make a number of diversified investments, including the purchase of the Landmark Hotel and Casino in Las Vegas, Nevada. In establishing the means by which the Landmark would be managed, Edward Wolfram and his wife, Zula Wolfram, created several corporations. These corporations, specifically Zula Productions, Inc., Mark III Corp., and T–Z Enterprises, Inc., were the entities which purported to maintain, operate, and control the Landmark facilities. Zula Wolfram was the majority or sole stockholder of each of these operating corporations, although it also appears that certain of these entities were wholly or partially owned subsidiaries of the others. The precise structure of ownership is unclear.

The Plaintiffs in this case are performers who allege to have had a contract between themselves and Zula Productions, Inc. The contract is alleged to have been an employment contract, whereby the Plaintiffs were to stage a performance at the Landmark. The performance was to have run for an extended engagement. Immediately prior to the Order of the District Court on February 5, 1983, which declared the Debtor's customers in need of protection, the production was unilaterally cancelled by the hotel's management. This cancellation was prior to the time the alleged contract could have been so terminated. Subsequent to the Order of the District Court, Edward and Zula Wolfram executed an assignment of all their assets in favor of the Debtor which, in turn, assigned its assets to the Trustee.

On April 27, 1983, the Plaintiffs filed an action in the Eighth Judicial District Court of the State of Nevada which was founded upon the alleged breach of the employment contract. Named as Defendants in that action were Zula Productions, Inc., Mark III Corp., T–Z Enterprises, Inc., Zula Wolfram, and others not specifically named. On June 16, 1983, the Plaintiffs filed this adversary proceeding seeking relief from the automatic stay so as to insure the propriety of continuing their state Court action.

## LAW

The issue which was the primary focus of counsel in their arguments was whether or not this Court has jurisdiction to entertain the underlying suit which is currently pending in the Nevada state Court. It appears as though this issue has arisen as a result of the unexpressed intent of the Trustee to have that action removed to this Court. Although there has not been a formal request for removal, the only conclusion that may be derived from the posture of the arguments is that such a request is contemplated. However, in comparing the arguments of counsel with the nature of the relief sought in the complaint, it is apparent that the issues of jurisdiction and relief from stay are not dispositive of each other. Therefore, they must be considered separately.

I

The Plaintiffs have argued that pursuant to the decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and the Interim Rule, this Court does not have jurisdiction to adjudicate an action for an alleged breach of contract. The Interim Rule reads in pertinent part:

"(1) All cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district.

(2) The reference to a bankruptcy judge may be withdrawn by the district court at any time on its own motion or on timely motion by a party.

(3)(A) Related procedings are those civil proceedings that, in the absence of a

petition in bankruptcy ... could have been brought in a district court or a state court...

Related proceedings do not include ... proceedings in respect to lifting of the automatic stay..."

On the other hand, the Trustee argues that under the provisions of 15 U.S.C. § 78aa, which reads in pertinent part:

"The district courts of the United States ... shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder..."

and 15 U.S.C. § 78eee(b) which reads in pertinent part:

"Upon the filing of an application with a court for a protective decree with respect to a debtor, such court ... shall have the exclusive jurisdiction of such debtor and its property wherever located...

Upon the issuance of a protective decree and appointment of a trustee, or a trustee and counsel, under this section, the court shall forthwith order the removal of the entire liquidation proceeding to the court of the United States in the same judicial district having jurisdiction (over cases under Title 11). The latter court shall thereupon have all of the jurisdiction, powers, and duties conferred by this chapter upon the court to which application for the issuance of the protective decree was made."

this Court has been given statutory authority to hear all matter relating to the liquidation of the brokerage under the Securities Investor Protection Act.

■■■ An action for an alleged breach of contract is an action which arises from common law theories of liability. *See,* 17 Ohio Jur.3d *Contracts* § 262. The initiation of a bankruptcy proceeding is not a prerequisite to prosecuting such a cause. Therefore, the action in this case is a related proceeding within the contemplation of the Interim Rule. *See, Hartwig Poultry, Inc. v. Kalmbach Feeds, Inc. (In re Hartwig Poultry, Inc.),* 33 B.R. 651 (Bkrtcy.N.D.Ohio 1983). Although related proceedings may be heard in the Bankruptcy Court in the absence of a proper objection, once an objection is made the Bankruptcy Court

may no longer hear the case. It is clear from the Plaintiff's brief that the Plaintiffs object to this Court's jurisdiction to hear the underlying case, it must refrain from doing so. However, it also appears that the Plaintiff's primary concern is continuing their case in Nevada rather than in the District Court. Therefore, since there is no formal request for removal or dismissal before the Court, and since the nature of the Complaint addresses issues within the jurisdiction of this Court, *see,* Interim Rule (d)(3)(A), transfer of this matter to the District Court would not be proper.

■■■ The Trustee has argued that 15 U.S.C. § 78eee(b)(2)(A) confers exclusive jurisdiction on this Court to hear all matters arising during the liquidation of a brokerage under that Title. Despite the encompassing appearance of that statute's language, the authority conferred by that section must still co-exist with the Court's lack of Article III case and controversy standing. Following the reasoning set forth in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* supra, to the extent that the enactment of the Bankruptcy Code was inadequate to confer case and controversy authority on the Bankruptcy Judges, the statutory authority of 15 U.S.C. § 78aaa et seq. is similarly inadequate to overcome their lack of Article III status. Without the constitutional prerequisites set forth in Article III, this Court is without subject matter jurisdiction to hear civil actions which are related proceedings whenever a proper objection to jurisdiction is made, regardless of whether the related proceedings are brought in a case under Title 11 or Title 15.

II

■■■ The second consideration which must be made in resolving this case is whether or not the automatic stay is applicable to the Plaintiffs. As it can be seen from the recitation of facts, each of the entities named as Defendants in the state Court action brought by the Plaintiffs is a separate and distinct legal entity that is not before this Court in its own capacity. It is

well established that the automatic stay does not enjoin actions against entities that have not filed a petition under the Bankruptcy Code. *See for example, In re Johns-Manville Corp.*, 26 B.R. 405 (Bkrtcy. S.D.N.Y.1983). Therefore, as a matter of law, it must be concluded that the automatic stay does not prevent the Plaintiffs from continuing their action in Nevada. However, as a matter of equity, the Trustee's arguments must be given further consideration.

It appears that any property owned by the Defendants in the Nevada suit was obtained through the use of the diverted funds. The Trustee has argued that any property of these defendants is property of the Debtor's estate by virtue of the constructive trust which came into existence when the fraud was perpetrated. Any judgment which may be entered against the Defendants would subject their property to attachment and execution by the prevailing party, a result that the automatic stay was intended to preclude. Although this Court cannot overlook the fact that the Defendants are not before this Court, it must recognize that allowing such attachment may prejudicially affect the Debtor's estate and the claims of other creditors.

The situation that is presented by these facts is similar to that when a debtor in bankruptcy is faced with an unliquidated contingent claim. In such cases, this Court has allowed the stay to be relieved for the purpose of allowing the claim to be prosecuted to the extent of determining liability. *See for example, In re Bock Laundry Machine Co.*, 37 B.R. 564 (Bkrtcy.N.D.Ohio 1983). If any liability is found to exist, the creditor may not execute against the debtor on such a judgment. Rather, the creditor must seek further relief from this Court. In these cases, the Court has reasoned that a plaintiff's claim will exist regardless of whether there is any potential recovery on the claim, and that a determination of whether or not the estate will be affected should precede a determination of how much it will be affected.

In view of the facts of this case, there does not appear to be any reason why the reasoning behind the decision in *In re Bock*

*Laundry Machine Co.*, supra, should not be applied in this case. The automatic stay was intended to prevent entities that are creditors from prejudically obtaining assets of the estate. In light of that purpose, it should also prevent creditors from indirectly attacking those same assets which are part of the estate by virtue of an equitable remedy. Therefore, the Plaintiffs will not be permitted to execute against any property of the Defendants should they prevail in their state Court action. If they are successful in their Nevada case, they should petition this Court for leave to file a claim or any other relief they believe would be appropriate.

In reaching these conclusions the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the automatic stay be, and is hereby held inapplicable to the Plaintiffs. This determination is made only to the extent that the Plaintiffs are permitted to resume the prosecution of their law suit in the Nevada Court for the purpose of determining liability and the amount, if any, of damages.

It is FURTHER ORDERED that the Plaintiffs will not attempt, in any manner, to collect on any judgments which result from that action. If the Plaintiffs are successful in that action, they shall petition this Court for leave to file a claim in this case or any other relief they believe to be appropriate.