In re BELL & BECKWITH, Debtor.

James L. MURRAY and Phyllis J. Murray, Plaintiffs,

v.

Patrick A. McGRAW, Defendant.

Bankruptcy No. 84–0036.
Related Case: 83–0132.

United States Bankruptcy Court,
N.D. Ohio, W.D.

Jan. 8, 1985.

Charles P. Baither, III, Toledo, Ohio, for plaintiffs.

Fuller & Henry, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Motions for Summary Judgment filed by each of the parties to this adversary action. The parties have argued the merits of their respective Motions and have had the opportunity to respond to the arguments made by opposing counsel. In support of the Defendant's Motion, the Securities Investor Protection Corporation (hereinafter SIPC) has also offered its arguments. The Court has reviewed these arguments as well as the entire record in this case. Based upon that review and for the following reasons, the Court finds that the Plaintiff's Motion for Summary Judgment should be GRANTED.

## FACTS

The parties have filed a stipulated set of facts which they have agreed may be used by the Court in reaching a decision in this matter. On February 4, 1983, the Plaintiff, a customer of the Debtor-brokerage, ordered the brokerage to sell from his account 3500 shares of Toledo Trustcorp stock. Later that same day, the Plaintiff received confirmation from the Debtor that buyers for the stock had been found. The purchasers were other stock brokers, including the Debtor, who were buying the securities in various quantities for their own inventories. None of the buyers was acting on behalf of any customer.

On February 5, 1983, a Petition was filed with the United States District Court for the Northern District of Ohio, Western Division, wherein the SIPC sought an order declaring the customers of the Debtor in need of protection under the provisions of 15 U.S.C. § 78aaa *et seq.* That Court issued such an order on February 10, 1983. As a result of that judgment entry, the sale which had been pending on February 4, 1984, was never consummated. The Trustee did, however, credit the Plaintiff's account with cash in an amount equal to that which would have been received had the contract been completed. The Trustee, having cancelled the sale to the prospective purchasers, retained possession of the stock certificates which were, at the time of filing, registered in a "street name" and in the Debtor's hands.

During the period which followed the Order for Relief, the Plaintiff requested the Trustee to return to him the shares of Toledo Trustcorp stock in lieu of receiving any advances by SIPC and any distribution of estate proceeds. This request was denied. Nevertheless, the Plaintiff has received sufficient SIPC and estate distributions so as to satisfy his claim against the Debtor, had it been made solely for the cash that would have been in his account. However, the Plaintiff believing that he is entitled to a return of the actual stock certificates, filed this adversary proceeding.

## LAW

The sole issue presently before this Court, and the sole issue to be discussed in this Opinion, is whether or not the Trustee had authority to "complete" a sale of securities ordered prior to the filing date but not yet fully performed when the Debtor was Ordered into liquidation. This issue calls into question the provisions of 15

U.S.C. § 78fff–2(e) which state in pertinent part:

"(e) Closeouts.—

(1) In general—Any contract of the debtor for the purchase or sale of securities in the ordinary course of its business with other brokers or dealers which is wholly executory on the filing date shall not be completed by the trustee, except to the extent permitted by SIPC rule."

Under this provision, the Trustee may not complete contracts with other brokers which, at the time of filing, are wholly executory in nature. Such contracts may, however, be completed if SIPC has adopted alternative regulations allowing those sales to be performed. The provisions of this section are a modification of the prior statute which allowed the closeout of uncompleted contracts if a customer of any brokerage had an interest in the transaction. *See*, 15 U.S.C. § 78fff(d)(6) (1970) (amended 1978).

The SIPC has adopted alternative regulations. SIPC Series 300 Rules (Rules Regarding Closeout or Completion of Open Contractual Commitments) Rule 301 states in pertinent part:

"An open contractual commitment shall be closed out or completed if:

(a) The open contractual commitment:

(1) Arises from a transaction in which a customer ... of the other broker or dealer had an interest."

Pursuant to this rule, the Trustee may complete only those sales in which there exists a customer of the non-debtor broker that has an interest in the transaction. For purposes of Rule 301, Rule 300(c) defines an "Open contractual commitment" as:

"(c) The term "open contractual commitment" shall mean a failed to receive or a failed to deliver which had a settlement date prior to the filing date and the respective obligations of the parties remained outstanding on the filing date or had a settlement date which occurs on or within five business days subsequent to the filing date: *Provided however*, that the term "open contractual commitment" shall not include any contractual commit-

ment for which the security which is the subject of the trade had not been issued by the issuer as of the trade date." (Emphasis theirs)

"Failed to deliver" is defined by Rule 300(b), which reads:

"(b) The term "failed to deliver" shall mean a contractual commitment of the debtor, made in the ordinary course of business, to deliver securities to another broker or dealer against receipt from such broker or dealer of the contract price in cash, provided that the respective obligations of the parties remained outstanding until the close of business on the filing date."

The term "open contractual commitment" originally appeared in the previous closeout statute, 15 U.S.C. § 78fff(d)(6)(d), and appears to address the same uncompleted transactions as are addressed by the term "executory contracts" in 15 U.S.C. § 78fff–2(e).

 A review of 15 U.S.C. § 78fff–2(e) and Rule 301 finds that their intent is to protect customers of other brokers from incurring financial hardship as the result of the demise of another broker. As indicated in *Securities & Exch. Com'm. v. Aberdeen Securities Co., Inc.*, 480 F.2d 1121 (3rd Cir.1973), the closeout provisions were intended to limit the possible "domino effect" that could result from the failure of one brokerage. By allowing the completion of open contractual commitments, customers would be able to receive that which had been contracted for prior to the filing of the petition, thereby avoiding a chain reaction among other brokers. However, the statute relied upon by that Court allowed the completion of contracts in which the customer of any brokerage had an interest. *See, Securities & Exch. Com'm. v. Aberdeen Securities Co., Inc.*, supra, at 1125. Subsequent to that decision, however, the statute has been modified so as to preclude the completion of executory commitments, except as provided by SIPC rule. The regulations adopted by SIPC only provide for the completion of contracts in which a customer of the non-debtor broker has an in-

terest. Apparently, the purpose of this rule is to preserve the protection afforded to the non-debtor's customer while at the same time allowing the estate's assets and the relationships of creditors to become fixed as of the moment the petition is filed. This purpose would be consistent with the provisions of the Bankruptcy Code which fix a debtor's assets and the rights of creditors as of the filing of the petition. *See*, 11 U.S.C. §§ 362, 541.

■ Having established the intent behind the operation of the closeout provisions, it must next be determined whether or not they are applicable in this case. It is well settled that an executory contract, for purposes of bankruptcy, is an agreement under which the obligations of both parties are so far unperformed that the failure of either to complete performance would constitute a material breach of the contract. *2522 South Reynolds Corp. v. Russell* (*In re 2522 South Reynolds Corp.*), 33 B.R. 616 (Bkcy.N.D.Ohio 1983). In the present case, the parties have agreed that the shares were never transferred to the purchasers nor was payment from the purchasers ever received.

Although the Plaintiff's account has been credited with cash in the same amount as would have been generated by the sale, this money was advanced by the Debtor's estate on behalf of the would-be purchasers. The purchasers never received the certificates subsequent to the filing of the petition.

■ Under the present circumstances, it must be concluded that at the time of filing the contract in question was an executory contract and an open contractual commitment within the meaning of 15 U.S.C. § 78fff–2(e) and Rule 301. The contract contemplated the sale of securities and was entered into during the ordinary course of the Debtor's business. At the time the petition was filed, there remained to be performed on the contract, as between the Plaintiff-seller and the broker-purchasers, substantial performance, specifically, transfer of the certificates and payment therefore. In the absence of liquidation proceedings, the unilateral failure of either party to perform these duties would constitute a material breach of the agreement. Since, at the time of filing, the contract was substantially unperformed, it must be held to be an executory contract within the scope of 15 U.S.C. § 78fff–2(e). Furthermore, inasmuch as Rule 301 only allows the Trustee to complete those executory contracts in which a customer of the non-debtor broker has an interest, and the purchasing parties were brokers acting on their own behalf and not on behalf of any customer, it must also be concluded that the Trustee should not have "completed" the sales.

In so holding, the Court notes that the intent of 15 U.S.C. § 78fff–2(e) and Rule 301 has been accomplished. The assets of the estate and the rights of the creditors became fixed at the time the Petition was filed, thereby avoiding further complication of the Debtor's affairs. When the petition was filed, the certificates became part of the Debtor's estate and the Plaintiff became a creditor of the Debtor for whatever claim may be allowed by law.

The Trustee has argued that the provisions of 15 U.S.C. § 78fff–2(e) and Rule 301 do not apply to the present circumstances. He argues that as of the date of filing there was no contract which required any further performance for its completion. This argument is based on the assertion that at the time the Plaintiff ordered the securities sold, the order for sale and the subsequent verification initiated a chain of intradependant transactions employed by the securities industry for the buying and selling of certificates. As argued by the Trustee, when the Plaintiff agreed to sell the certificates they were sold to the Debtor who, in turn, sold them to the respective purchasers. If these purchasers had been brokers acting on behalf of their own customers, they would have, in turn, sold the certificates to them.

■ This system of transfer, if reflective of the underlying intent behind the transactions, would remove the exchange

between the Plaintiff and the Debtor from the limitations of 15 U.S.C. § 78fff–2(e), and Rule 301, inasmuch as it was not a contract between the Debtor and another broker. However, the Court cannot, despite the practices of the securities industry, view the sale as a multi-faceted transaction. The underlying nature of the customer-broker relationship is that of principal-agent rather than as independently contracting parties. When a broker undertakes to sell a customer's securities, it is both the understanding and intent of the parties that it is the customer's securities which are to be sold, and that the customer will receive the proceeds of any such sale. Although the methods employed in effectuating the actual transfer of certificates may be more involved than those found in a simple buyer-seller relationship, this fact alone does not alter the fundamental relationship between the parties. Similarly, it does not affect the protective results intended by the closeout provisions. Therefore, it must be concluded the position argued by the Trustee is without merit.

The argument could be raised that as to those securities purchased by the Debtor, the sale would not be subject to the restrictions of 15 U.S.C. § 78fff–2(e) and Rule 301 by virtue of the fact that it is not a sale between the Debtor (on behalf of a customer) and another broker. Such a contract could be viewed as being between independently contracting parties and therefore, would not necessarily be precluded from closeout. Although this argument may, at first glance, appear to have some merit, further consideration finds that it is subject to the same considerations given to the contracts with other brokers.

As previously indicated, the amendment to the closeout provision and the rules pertaining thereto are intended to preserve a debtor's estate as of the date of filing. The closeout exception allows closeouts only to the extent necessary to protect the customers of non-debtor brokers. The fact that the language of these statutes does not specifically address a sale between a debtor and a customer does not prevent the Court from applying the policies espoused in those statutes to the present situation. These policies dictate that the rights of creditors and the assets of the estate are to be fixed as of the time of the petition. The assets are then to be distributed to all creditors according to applicable liquidation procedures. If a pre-petition sale to the debtor were allowed to be completed, it is possible that the seller would receive a greater percentage of his claim than would customers not having had the fortune to sell securities to the Debtor immediately prior to the petition. The equitable nature of the Bankruptcy Code and the closeout provisions of 15 U.S.C. § 78fff–2(e) cannot support such a result. Therefore, it must be held that any crediting of the Plaintiff's account as a result and in contemplation of the sale of securities to the Debtor was also improper.

Accordingly, for the foregoing reasons, it must be concluded that the Trustee was not authorized to closeout the sale of the Plaintiff's securities. It appearing that this question is dispositive of this case, it must also be concluded that there are no genuine issues of material fact that remain in this case, and that the Plaintiff is entitled to judgment as a matter of law.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Plaintiff's Motion of Summary Judgment be, and is hereby, GRANTED to the extent that it decides the issues presently before the Court.

It is FURTHER ORDERED that any further adjudication of the Plaintiff's claim, as established in this Opinion, will be filed in the primary case file.