In re BELL & BECKWITH, Debtor.

James L. MURRAY, et al., Plaintiffs,

v.

Patrick A. McGRAW, Trustee,
Defendant.

No. C 85–7240.

United States District Court,
N.D. Ohio, W.D.

Jan. 31, 1986.

## OPINION AND ORDER

JOHN W. POTTER, District Judge.

This matter is before the Court on appeal from bankruptcy court's final decision in adversary proceeding No. 84–0036 of bankruptcy court case No. 83–0132. Defendant-appellant Patrick McGraw (Trustee) and the Securities Investor Protection Corporation (SIPC) (collectively hereafter appellants) appeal Bankruptcy Judge Richard L. Speer's January 2, 1985 memorandum and order granting plaintiffs-appellees' (hereafter Murrays) motion for summary judgment pursuant to Bankruptcy Rule 7056 and Fed.R.Civ.P. 56(a).

The bankruptcy court found that on February 4, 1983 the Murrays, customers of Bell & Beckwith (debtor-brokerage), ordered debtor to sell 3500 shares of Toledo Trustcorp common stock which debtor then held in "street name" for the account of the Murrays, that on said date debtor later

advised the Murrays that the sale of the aforementioned securities "had been effected in accordance with Plaintiffs' agreement" regarding certain quantities and prices therefor, and that the prospective purchasers of the subject securities were securities brokers and/or dealers who were purchasing said securities for their own accounts and not on behalf of customers.

The sales transactions for the Murrays' Toledo Trust corp stock were to settle on February 11, 1983. On February 5, 1983, SIPC, pursuant to 15 U.S.C. § 78eee(a)(3), filed an application in this Court for a protective decree seeking protection for the customers of Bell & Beckwith (hereafter debtor). Pursuant to 15 U.S.C. § 78eee(b)(1), this Court, on February 10, 1983, issued such a protective decree and appointed a trustee, defendant-appellant herein, pursuant to 15 U.S.C. § 78eee(b)(3). Pursuant to 15 U.S.C. § 78eee(b)(4), the entire liquidation proceeding regarding debtor was removed to bankruptcy court. Due to the court proceedings of February 10, 1983, the sales transactions of the Murrays' Toledo Trustcorp stock to the seven securities brokers and/or dealers including debtor, were never consummated or fully executed. Notwithstanding, the Murrays' account with debtor was credited with a dollar amount equal to that which the Murrays would have received upon full execution and completion of the subject stock sales transactions agreed to on February 4, 1983. The trustee having determined that the Murrays, as of the "filing date," were claimants for cash rather than for securities, has, *inter alia,* retained possession of the subject 3500 shares of Toledo Trustcorp common stock.

In granting plaintiffs' motion for summary judgment, the bankruptcy court determined that, as of February 5, 1983, the "filing date," the contracts for the sale of the Murrays' Toledo Trustcorp stock were wholly executory and not fully executed. Accordingly, the bankruptcy court further determined that the trustee was not authorized to close out the various sales agreements for the Murrays' Toledo Trustcorp stock, and said court held, in effect, that

the Murrays are entitled to a return of their 3500 shares of Toledo Trustcorp common stock.

Appellants assert that on February 5, 1983, the "filing date," see 15 U.S.C. § 78 *lll* (7), the books and records of debtor reflected that the Murrays had sold their 3500 shares of Toledo Trustcorp common stock. Appellants contend, in essence, that, as of the "filing date," the Murrays were and remain claimants for the cash proceeds of the sale of their Toledo Trustcorp stock and not claimants for the securities themselves. Appellants argue that the portion of the sales transaction representing the sale of the subject stock to debtor itself was "surely not 'wholly executory', ... [r]ather, that portion of the transaction was absolutely complete."

The Murrays maintain that the subject February 4, 1983 stock transactions had a settlement date of February 11, 1983, and thus were in the nature of executory contracts with performance due on February 11, 1983. The Murrays assert that payment for the sale of their Toledo Trustcorp stock was not made into their account with debtor until *"after* the filing date and *after* the Trustee had been appointed for the liquidation of Bell & Beckwith" and they contend that the subject stock sales transactions had not been completed on or prior to the "filing date" for the application by SIPC for a protective decree. (Emphasis original.) The Murrays argue that under the facts of this case the trustee is without legal authority to complete the subject securities sales transactions either with debtor or with the other brokers and/or dealers.

This Court has appellate jurisdiction over the instant adversary proceeding. 28 U.S.C. §§ 158(a). The bankruptcy court's findings of fact are not to be set aside unless found to be clearly erroneous; however, said court's conclusions of law are subject to *de novo* review. See *Martin v. United States (In re Martin),* 761 F.2d 472, 474 (8th Cir.1985), *citing, In re Comer,* 723 F.2d 737, 739 (9th Cir.1984). See

also Bankruptcy Rule 8013. The party seeking to reverse on appeal a bankruptcy court's findings of fact has the burden of proving that such findings are clearly erroneous, and merely showing that a bankruptcy court could have reached another conclusion on the evidence presented, is not sufficient. *Browning v. Browning (In re Michael Browning)*, 31 B.R. 995 (S.D.Ohio 1983); *In re R.N. Salem Corp.*, 29 B.R. 424 (S.D.Ohio 1983). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court ... is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Fields v. Bolger*, 723 F.2d 1216, 1220 (6th Cir.1984).

■ The Securities Investor Protection Act (SIPA) is remedial legislation. *In re First State Securities Corp.*, 34 B.R. 492, 496 (Bankr.S.D.Fla.1983). As such, it should be construed liberally to effect its purpose of protection of customers of failing securities brokers and/or dealers. *Id., citing, Tcherepnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). The SIPA is designed to protect customers of securities brokers and dealers which might fail, and who "have either cash or securities or both in the custody of broker-dealer firms." *Securities and Exchange Commission v. Ambassador Church Finance/Development Group, Inc. (In re Henry C. Atkeison, Jr.)*, 446 F.Supp. 844, 847 (M.D.Tenn.1977), *quoting*, H.R.Rep. No. 91–1613, 91st Cong., 2d Sess., reprinted in [1970] U.S.Code Cong. & Admin.News, pp. 5254, 5255. See also *Securities and Exchange Commission v. Guaranty Bond and Securities Corp.*, 496 F.2d 145, 147 (6th Cir.1974), *rev'd on other grounds sub nom. Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975). The SIPA provides protection to "customers" of an insolvent securities broker-dealer by, *inter alia,* giving said customers preference over general creditors. *Ravis v. Day (In re Investors Security Corp.)*, 6 B.R. 420, 423 (Bankr.W. D.Pa.1980). See 15 U.S.C. § 78fff–2(b), (c).

■ The bankruptcy court determined, in essence, that the Murrays' claim is one for securities rather than one for cash. Since the SIPA does not define "claim for cash" or "claim for securities," such issue must be resolved by examining the status of the subject securities sales transactions existing on the "filing date." See, e.g., *Securities Investor Protection Corp./Securities and Exchange Commission v. Morgan, Kennedy & Co.*, 3 B.C.D. 15, 17 (Bankr.S.D.N.Y.1977). Cf. 15 U.S.C. §§ 78*lll*(2), (7), and (11) (customer, filing date and net equity respectively). In other words, to determine the nature of the Murrays' status in relationship to debtor, and thereby to SIPC, the Court must look at matters as they existed on the "filing date" of the liquidation proceeding. *Securities and Exchange Commission v. Aberdeen Securities Co.*, 480 F.2d 1121, 1123–24 (3d Cir.1973), *cert. denied sub nom. Seligsohn v. Securities and Exchange Commission*, 414 U.S. 1111, 94 S.Ct. 841, 38 L.Ed.2d 738 (1973); *Securities and Exchange Commission v. Ambassador Church Finance/Development Group, Inc., supra*, 847. When SIPC on February 5, 1983 filed its application for a protective decree, the respective statuses of the customers of debtor and of debtor itself became fixed. In other words, when the application for protection was filed on February 5, 1983, the assets of debtor's estate and the rights and relationships of creditors of debtor became fixed.

Pertinent to the sale of the Murrays' Toledo Trustcorp stock to the brokers and/or dealers other than debtor, the SIPA provides that any open contractual commitment of the debtor for the purchase or sale of securities in the ordinary course of its business with other brokers or dealers which is wholly executory on the filing date, shall not be completed by the trustee unless the open contractual commitment arises from a transaction in which a customer of the other broker or dealer has an interest. See 15 U.S.C. § 78fff–2(e)(1); SIPC Rules 300 and 301.

■ An executory contract is an agreement under which the obligations of both

parties are so far unperformed that the failure of either party to complete performance would constitute a material breach of the contract. *2522 South Reynolds Corp. v. Russell (In re 2252 South Reynolds Corp.)*, 33 B.R. 616 (Bankr.N.D.Ohio 1983). Although the SIPA does not specifically define the term "executory contract," generally, as long as any material part of a contract remains unperformed, such contract is executory. See, e.g., *Jenson v. Continental Financial Corp.*, 591 F.2d 477, 481 (8th Cir.1979). An executory contract has also been defined as a contract "where some future act is to be done", as contrasted with an executed contract "where nothing remains to be done by either party." BLACK'S LAW DICTIONARY 292 (rev. 5th ed. 1979). See also *Solomon v. Pacific Telephone and Telegraph Co. (In re U.S. Financial, Inc.)*, 594 F.2d 1275, 1280 (9th Cir.1979) (executory contract contemplates rendition of future performance).

Pertinent to the sale of the Murrays' Toledo Trustcorp stock to debtor, the rules relating to securities transactions of over-the-counter markets, in pertinent part, provide:

(b) The term "completion of the transaction" means ...

(3) In the case of a customer who sells a security through or to a broker, dealer ... except as provided in paragraph (b)(4) of this section, ... if the security is in the custody of the broker, dealer ... at the time of sale, the time when the broker, dealer ... transfers the security from the account of such customer;

(4) In the case of a customer who sells a security through or to a broker, dealer ... and who delivers such security to such broker, dealer ... prior to the time when delivery is requested or notification is given that delivery is due, the time when such broker, dealer ... makes payment to or into the account of such customer.

17 C.F.R. § 240.15cl–1 (1982).

■ Upon consideration and after thoroughly reviewing the appeal briefs of both parties and the record in this adversary proceeding, the Court finds appellants assignments of error and their arguments advanced in support thereof not to be well taken. The parties stipulated and the Court below found that all the purchasers of the Murrays' Toledo Trustcorp stock were brokers and/or dealers in securities, that they were purchasing the Murrays' stock for their own accounts, and that none of the stock purchases of the Murrays' Toledo Trustcorp stock were made by said purchasers acting on behalf of one of their customers. As of the "filing date," debtor had neither transferred the Toledo Trustcorp stock from the Murrays' account nor had payment for said securities been made to their account.

The bankruptcy court's express finding that, as of the "filing date," the sales transactions for the Murrays' Toledo Trustcorp stock both to debtor and to the other six securities brokers and/or dealers remained uncompleted, is not clearly erroneous. The bankruptcy court's determination that, as of the "filing date," the oral sale agreements or contracts regarding the subject securities were executory and not fully executed, is neither clearly erroneous nor contrary to law. This Court further finds that the bankruptcy court's determination that subsequent to the "filing date" the trustee was without legal authority to complete the subject sales transactions regarding the Murrays' Toledo Trustcorp stock, is not contrary to law. Accordingly, the bankruptcy court's order granting plaintiffs' motion for summary judgment will be affirmed.

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that the bankruptcy court's January 8, 1985 memorandum and order in adversary proceeding No. 84–0036 of bankruptcy case No. 83–0132 be, and the same hereby is, AFFIRMED.