### In Re BELL & BECKWITH, Debtor.

### Bankruptcy No. 83–0132.

United States Bankruptcy Court,
N.D. Ohio, W.D.

July 7, 1987.

---

Fuller & Henry, Toledo, Ohio, for trustee.

Joel Wolosky, Parker, Chapin, Flattau & Klimpl, New York City, for Todman.

Stephen P. Harbeck, Washington, D.C., for SIPC.

Julius Poppinga, McCarter & English, Newark, N.J., for Richard Hill.

Frank C. Razzano, Shea & Gould, Washington, D.C., Richard E. Wolff, Spengler, Nathanson, Heyman, McCarthy & Durfee, Toledo, Ohio, for McKenny.

Philip R. Joelson, Toledo, Ohio, for J. Robert Jesionowski.

James A. Hofelich, Cleveland, Ohio, for Partners.

David C. Wicklund, Toledo, Ohio, for Todd & Thompson.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Hearing on Motion for Approval of Settlement Agreement with Frederick S. Todman & Company, et al, and the Trustee's Agreement with Bevill, Bressler & Schulman, Inc. and Brevill, Bressler & Schulman Asset Management Corporation Trustees. Objections to the settlement were filed by claimants Charles A. and Mary L. McKenny, the Bell & Beckwith partners: J. Robert Jesionowski, George M. Todd, Roscoe R. Betz, Robert R. Coon, Jr., Thomas L. McGhee, John E. Thompson and Donald Hennings (hereinafter "Partners"), and J. Robert Jesionowski separately. The parties had the opportunity to file Pre-Hearing arguments regarding the merits of the Motion and the Objections. At the Hearing, the parties presented the evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the testimony, exhibits and arguments of counsel, as well as the entire record in this case. Based upon the review, and for the following reasons, the Court finds that the Objections of the McKennys, the Partners, and Mr. Jesionowski should be Overruled, and that the proposed Settlement should be Approved.

## FACTS

The Movant in this action is the Trustee for the liquidation of the Debtor-brokerage in the underlying bankruptcy proceeding. Bell & Beckwith, the Debtor, was a stock brokerage located in Toledo, Ohio. The brokerage operated as a partnership, and was managed by Edward P. Wolfram, Jr. (hereinafter "Wolfram"). Starting in approximately 1973, Wolfram began systematically diverting cash and securities held by the brokerage in customer margin accounts. At the time Mr. Wolfram's fraud was discovered by a Securities & Exchange Commission examiner in February of 1983, Wolfram had stolen approximately 46 Million Dollars.

In order to mask these diversions, Wolfram employed an internal accounting procedure which reflected that his transfers were collateralized by other securities which were held by the brokerage in separate brokerage accounts, a precaution required by securities regulations when internal transfers are made. In this case, the collateralization primarily involved shares of the Toto Corporation, a Japanese plumbing supply company. During the course of the Wolfram fraud, the stock generally traded between One Dollar and Eighty Cents ($1.80) and Two Dollars and Ten Cents ($2.10). Wolfram claimed that his Toto stock was special "founders stock". Using this pretext, he inflated the value of

the stock until it reached approximately Ninety-nine Thousand Nine Hundred and Ninety-nine Dollars ($99,999.00) per share.

Prior to the time Wolfram began his fraudulent diversions, Arthur Young & Company (hereinafter "Arthur Young") was employed by the brokerage to conduct the annual audit of the brokerage, and to publish the brokerage's annual report. Arthur Young's employment with Bell & Beckwith continued until March 31, 1976. At that time, it appears that about Seven Hundred and Seventy-seven Thousand Dollars ($777,000.00) had been illegally diverted. Toward the end of Arthur Young's employment, it became aware of certain discrepancies in the accounting procedures used by Bell & Beckwith. Specifically, Arthur Young learned that the integrity of Bell & Beckwith's internal accounting controls had not been maintained. While Arthur Young did confront Bell & Beckwith with those improprieties, it did not detect or disclose the fraud. After negotiations, the settlement reached between the Trustee and Arthur Young was for Three Hundred Eighty-Three Thousand Five Hundred Twelve Dollars and Forty-four Cents ($383,512.44). It was approved by this Court in *In re Bell & Beckwith*, 50 B.R. 422 (Bankr.N.D.Ohio 1985).

After Arthur Young's employment was terminated, the Debtor engaged Frederick S. Todman & Company (hereinafter "Todman") to assume the role as the brokerage's auditors. Todman continued in that capacity until the time Bell & Beckwith was ordered into liquidation. Although the magnitude of Wolfram's diversions continued to increase during Todman's tenure as auditor, Todman's financial reports concerning the Debtor's financial affairs also failed to detect or disclose the undercollateralized transfers. At the time the United States District Court for the Northern District of Ohio, Western Division, ordered Bell & Beckwith closed, there existed in the Debtor's customer accounts an actual deficiency of approximately Forty-six Million Dollars ($46,000,000.00).

Shortly after the brokerage was closed, a number of lawsuits were filed against Todman by different plaintiffs. These cases were filed by brokerage customers, among them *Mary L. McKenny, et al. v. Frederick S. Todman & Company, et al.*, Case No. C84–7298, the Partners, styled *J. Robert Jesionowski, et al v. Frederick S. Todman & Company, et al.*, Case No. C83–178, and the Trustee in this case. These actions were based on allegations of accountant malpractice in their audits and the preparation and publishing of the Debtor's financial reports. Although these actions were filed in both federal and state courts, under 11 U.S.C. § 362(a)(3) the Trustee sought, and received, a stay of all other actions against Todman which stemmed from its involvement with the Debtor. With the exception of limited proceedings, these other actions have remained stayed since that time. The only Bell & Beckwith suit which has been prosecuted is the one filed by the Trustee.

The Trustee's lawsuit has followed a somewhat tortuous path to this Hearing on settlement. On April 29, 1983, the Trustee filed suit against Todman in this Court. After some preliminary discovery, Todman moved for withdrawal of the reference and removal to the United States District Court demanding a trial by jury. The case was removed to the District Court and assigned to United States District Judge John W. Potter.

In the District Court, Todman moved for dismissal of the Trustee's complaint on numerous grounds. Todman alleged: 1) service of process was insufficient, 2) there was a lack of jurisdiction over the Todman partners, 3) some of the named partners were new and could not be liable for audits conducted before their employment, 4) the Wolfram fraud should be imputed to the Trustee, barring recovery, 5) the Trustee lacked standing to represent the Bell & Beckwith partners, creditors, customers or the Securities Protection Insurance Corporation, 6) there was no privity between Todman and the Bell & Beckwith customers, creditors, and SIPC, and 7) the Trustee's claims were barred by statutes of limitations. The Trustee filed an amended complaint, totalling 106 paragraphs, detailing the claims against Todman and the

Todman partners. Todman moved to dismiss the Trustee's amended complaint on the same grounds. Judge Potter denied the Motion to Dismiss, and Todman filed an answer. At the same time, Todman moved for a reconsideration of its Motion to Dismiss the Trustee's Complaint and for leave to file an interlocutory appeal.

While the litigation was proceeding, the parties were conducting extensive discovery on Todman's insurance coverage, workpapers, and personnel involved in the Bell & Beckwith audits, and Securities & Exchange Commission documents and transcripts.

In August of 1984, the Securities & Exchange Commission imposed sanctions against Todman and Victor Marchioni, the Todman partner in charge of the Bell & Beckwith audits. *See,* SEC Administrative Proceeding No. 3–6400.

Meanwhile, the Trustee was also conducting settlement negotiations. There were several settlement conferences during the Bankruptcy Court and District Court proceedings. Also, the Trustee made a formal demand for settlement for the full amount of the Todman insurance coverage, Ten Million Dollars ($10,000,000.00). Todman countered with a settlement offer of Two Million Dollars ($2,000,000.00) from its primary insurance carrier.

On February 1, 1985, Todman's Motions for reconsideration of dismissal and for leave to file interlocutory appeal were denied by Judge Potter. On February 5, 1985, Judge Potter recused himself and the case was transferred to United States District Judge Nicholas J. Walinski. At a pre-trial conference, Judge Walinski set a March 4, 1986 date for a Jury Trial. On March 1, 1985, Todman moved to recuse Judge Walinski. On April 17, 1985, Judge Walinski recused himself, and the case was transferred to the United States District Court for the Northern District of Ohio, Eastern Division. It was ultimately assigned to United States District Judge Alice M. Batchelder.

During the course of events which led up to the transfer of the Trustee's lawsuit to the Eastern Division, the Trustee engaged the accounting firm of Touche Ross & Company to investigate and report on the Todman auditing procedures which were being used at the time of the Bell & Beckwith audit. At the same time, and more importantly, a second brokerage firm failed, once again due to a massive fraud perpetrated by management.

On April 7, 1985, in the wake of the ESM Government Securities collapse, Bevill, Bressler, & Schulman Asset Management Corporation (hereinafter "AMC") filed for protection under 11 U.S.C. Chapter 11. In very short order, Bevill, Bressler & Schulman Inc. (hereinafter "BBS") was also placed in receivership in New Jersey. Thirty-four related corporations and partnerships were involved. It was quickly decided that SIPC protection was needed to cover over One Hundred and Fifty Million Dollars ($150,000,000.00) in losses caused by the fraudulent diversion of funds from BBS. For the estate of Bell & Beckwith, this was an unfortunate coincidence. BBS had used the same auditor, and any judgment against Todman for accountant malpractice in the BBS case could come out of the same Ten Million Dollars ($10,000,-000.00) in Todman's insurance coverage.

On the litigation front, the Trustee requested a trial date on all issues. Estimates as to the length of the trial were in the neighborhood of two months. Todman, on the other hand, renewed its Motions for reconsideration of dismissal and leave to file an interlocutory appeal. This action was characterized by Todman as a "Motion To Start Over" based upon the recusals.

The Trustee continued to conduct extensive discovery. Between July 16, 1985 and September, 1985, the attorney's for the Trustee conducted 10 depositions of Todman employees and partners who were thought to have taken part, at various times, in the Bell & Beckwith audits.

As the Trustees for AMC and BBS began to pursue possible claims against Todman, the settlement negotiations became more serious. On November 27, 1985, the AMC Trustee received approval to retain special counsel to investigate claims and file suit against Todman. On July 11, 1986, the

BBS Trustee filed a suit seeking compensation for damages alleged to exceed Six Hundred Million Dollars ($600,000,000.00).

After a few false starts, the Trustees of Bell & Beckwith, BBS and AMC met with Todman and Todman's insurance carriers on August 11, 1986. An agreement in principle was reached between the three Trustees to divide the insurance proceeds.

Eleven days later on August 22, the United States District Court for the Northern District of Ohio again denied the Motions to reconsider dismissal and for leave to file an interlocutory appeal. Judge Batchelder ordered a report on the status of settlement negotiations and set aside eight weeks for Trial, starting February 3, 1987. The Trustee and Todman jointly moved to vacate the trial date. Although the trial was rescheduled, it never went forward.

On April 8, 1987 there was a finalizing of the settlement agreement. On April 15, the settlement agreement was closed in escrow. The Trustee received insurance carrier settlement drafts in the amount of Five Million One Hundred and Eighty-seven Thousand Five Hundred Dollars ($5,187,500.00) or 51.875% of the available insurance proceeds. In return Todman and the insurance carriers are to receive releases of all claims brought by the Trustees of the various estates.

On April 16, 1987, the Trustee filed a Motion requesting that this Court approve the settlement. Notice was sent out, and in addition, notice was given through publication in the Wall Street Journal and the Toledo Blade. This Court conducted a Hearing on the proposed settlement, at which the Trustee introduced the depositions of Seth T. Taube, an associate with the law firm representing the BBS Trustee, and Robert J. Pruger, a CPA for Earnst & Whinney, the accountants for the Bell & Beckwith liquidation. Testimony was given by Richard W. Hill, Trustee for BBS, and Patrick A. McGraw, Trustee for Bell & Beckwith.

For further information on the history and many different aspects of the Bell & Beckwith case not recited in this Statement of Facts, *see, Securities Investment Protection Corp. v. Bell & Beckwith*, 28 B.R. 285 (Bankr.N.D.Ohio 1983); and the following Opinions styled *In re Bell & Beckwith*, 39 B.R. 914, 41 B.R. 697, 44 B.R. 656, 44 B.R. 659, 44 B.R. 661, 44 B.R. 664, 47 B.R. 528, 50 B.R. 419, 50 B.R. 422, 50 B.R. 437, 50 B.R. 440, 54 B.R. 303, 55 B.R. 872, 64 B.R. 144, 64 B.R. 620, 66 B.R. 703, 66 B.R. 707, 68 B.R. 557, 70 B.R. 725 (Bankr.N.D. Ohio 1984–1987).

### LAW

Bankruptcy Rule 9019(a) states:

(a) **Compromise.** On motion by the trustee and after a hearing on notice to creditors, the debtor and indenture trustees as provided in Rule 2002(a) and to such other persons as the court may designate, the court may approve a compromise or settlement.

 The decision whether to approve an application to compromise is a matter within the sound discretion of the Bankruptcy Court. *In re Mobile Air Drilling Co., Inc.*, 53 B.R. 605 (Bankr.N.D.Ohio 1985); *In re Hydronic Enterprise, Inc.*, 58 B.R. 363 (Bankr.D.R.I.1986); *In re Hallet*, 33 B.R. 564 (Bankr.D.Me.1983). In deciding whether to approve a proposed settlement, the Court must determine whether the settlement is in the best interest of the estate. *In re Neshaminy Office Bldg. Associates*, 62 B.R. 798, 803 (E.D.Pa.1986); *In re Hallet, supra* 33 B.R. at 565.

 In evaluating a proposed settlement agreement, the Bankruptcy Court should consider the probability of success in litigation, the difficulties, if any, to be encountered in collecting any judgments that might be rendered, the complexity of the litigation involved, as well as the expense, inconvenience and delay necessarily attendant to the litigation, and the paramount interests of creditors with proper deference to their reasonable views. *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir.1986); *In re Technology for Energy Corp.*, 56 B.R. 307, 311 (Bankr.E.D.Tenn. 1985); *In re Hermitage Inn, Inc.*, 66 B.R. 71, 72 (Bankr.D.Colo.1986); *Matter of Carla Leather, Inc.*, 44 B.R. 457, 466 (Bankr.S.

D.N.Y.1984), aff'd, *In re Carla Leather, Inc.*, 50 B.R. 764 (S.D.N.Y.1985); *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir.1929). The Court may give weight to the opinions of the Trustee, the parties and their counsel, in determining the reasonableness of the proposed settlement. *In re Heissinger Resources Ltd.*, 67 B.R. 378, 383 (C.D.Ill. 1986). While creditors' Objections to a settlement agreement must be afforded due deference, such Objections are not controlling. *In re A & C Properties, supra* 784 F.2d at 1382; *In re Mobile Air Drilling Co. Inc., supra* 53 B.R. at 607.

■ The Trustee, as proponent of the proposed settlement, has the burden of persuasion that the settlement is in the best interest of the estate. *In re Hermitage Inn, Inc., supra* 66 B.R. at 72; *In re GHR Companies, Inc.*, 50 B.R. 925, 931 (Bankr. D.Mass.1985). In determining whether to approve the Trustee's proposed settlement, the Court does not substitute its judgment for that of the Trustee. *In re Neshaminy Office Bldg. Associates, supra* 62 B.R. at 803; *Matter of Carla Leather, Inc., supra* 44 B.R. at 465. Instead, the Court will, at the Hearing on the proposed settlement, "canvass" the issues and see if the settlement falls below the lowest point in the range of reasonableness. *In re Technology for Energy Corp., supra* 56 B.R. at 311. The purpose of the Hearing is not for the Court to decide the numerous issues of law and fact raised by the Objectors. *Id.* What is being sought is not the resolution of issues, but rather the identification and clarification of the litigation issues so that the Court can make an informed decision on the reasonableness of the settlement. *Matter of Carla Leather, Inc. supra* 44 B.R. at 470; *In re Hermitage Inn, Inc., supra* 66 B.R. at 72.

Finally, the Court bears in mind the first sentence of *In re Heissinger Resources Ltd.*, "The law favors compromise." 67 B.R. 378, 379. *See also, In re A & C Properties, supra* 784 F.2d at 1381.

■ In the case at bar the Trustee has outlined the reasons for settlement in some detail. In canvassing the issues, this Opinion will only touch on the Trustee's major considerations in reaching the settlement agreement and the Objections facing the Trustee. The Objections to the settlement are as follows: 1) The settlement, as proposed, is too small and the Trustee should therefore pursue the assets of the Todman partnership and partners, 2) The other Trustees (for AMC and BBS) should not receive any money, and the Trustee should disclose the costs already incurred in litigation with Todman, 3) The Trustee should not settle on others' behalf. The McKennys and the Partners seek to have this Court declare their lawsuits against Todman to be personal and thus outside the bounds of this settlement agreement.

## THE PROBABILITY OF SUCCESS IN LITIGATION

The Trustee has estimated that the estate of Bell & Beckwith would have a Fifty (50) to Seventy (70) percent chance of winning a judgment in the Twenty Million ($20,000,000.00) to Thirty Million Dollar ($30,000,000.00) range. This estimate is based not only on the initial trial and the odds of success contained therein, it also includes all appeals and a possible re-trial. Similarly, the BBS Trustee testified that their case against Todman was also very strong, with a high likelihood of success. It should be noted that the winning of a judgment is not the same as collecting its full amount, and taking a case to trial always carries with it certain risks.

## THE DIFFICULTIES IN COLLECTING JUDGMENTS

There are several facets to the collectability issues. If Bell & Beckwith were the sole entity pursuing an action against Todman, there could be problems in reaching the assets of the Todman partnership and partners. The partnership and the partners could seek protection under Chapter 11 of the Bankruptcy Code, and the collection of any judgment over the limits of the insurance coverage would be subject to a long delay.

The difficulties increase several magnitudes when the two actions are considered in tandem. Nothing prevents the BBS and AMC Trustees from settling with Todman

and the insurance companies separately for the limits of the insurance coverage. This could leave Bell & Beckwith with nothing. New York apparently follows the doctrine of "first in time, first in right" outlined in *Gerdes v. Traveler's Insurance Company,* 440 N.Y.S.2d 976, 109 Misc.2d 816 (1981) which the Trustee believes is controlling in construing the Todman insurance policies. An additional factor the Trustee had to consider was the possibility that the costs of defending against the lawsuits could conceivably have come out of the Ten Million Dollar fund. Apparently nothing in the language of the policy prevents such a set-off.

Finally, another complicating factor was the size of the damages which the AMC and BBS Trustees were expected to be able to prove at trial. If, as estimated, they were able to prove damages in excess of One Hundred and Fifty Million Dollars ($150,000,000.00), any pro rata distribution would favor AMC and BBS. Although this Opinion will not discuss the specifics of the financial disclosures made by Todman and its general partners to the Trustee, the Trustee makes a very strong argument that the amount of assets is too small to offset the risks inherent in the huge damages provable by AMC and BBS. Admittedly, the Bell & Beckwith Trustee, even with the recusals, was ahead of AMC and BBS in the "litigation race". However, this lead does not necessarily translate into a decisive advantage if the cases went to judgment. Also, it does very little, when weighed against the amounts of the AMC and BBS losses, to force Todman and the insurance companies to settle with Bell & Beckwith separately for any more than the Five Million One Hundred and Eighty-seven Thousand Five Hundred Dollars ($5,187,500.00) now on the table.

## THE COMPLEXITY OF THE LITIGATION INVOLVED

Obviously, the second lawsuit, in competition with the Bell & Beckwith action adds to the complexity of the considerations facing the Trustee. Nonetheless, even when viewed strictly on its own merits, the litigation against Todman is complex. A review of the defenses set forth in the Todman Motion for Dismissal reveals that some are less than compelling. However, when considered as a whole, the Trustee faces a difficult task in securing a final judgment. The Attorney for the Trustee stated that they had found no controlling authority on many of the issues raised in the litigation. When the lack of controlling authority is combined with the amount of money at stake, an appeal seems to have been almost certain.

The fact that eight weeks were set aside for trial by Judge Batchelder speaks to the volume of information which would have to be communicated to the jury. Also of concern to the Trustee was the problem and expense of securing the presence of witnesses from various parts of the country.

## THE EXPENSE

The Trustee for Bell & Beckwith testified that he has already spent more than One Million Dollars ($1,000,000.00) in pursuing the lawsuit against Todman. Litigation costs for 1987, if the trial had gone forward as scheduled, would have been between Three Hundred Thousand ($300,000.00) and Five Hundred Thousand Dollars ($500,000.00). Appeals would of course increase the costs, as would a retrial. As the expenses would continue to increase, the amount available to the estate would be diminished by those expenses. The Trustee's testimony on the expenses incurred appears to answer Mr. Jesionowski's Objection based on the lack of information on the litigation's costs.

## THE INCONVENIENCE

The convenience or inconvenience does not appear to have been a major factor in the settlement or in the Objections.

## THE DELAY

Certainly, if the Trustee took this case to trial, the final resolution of this matter would be delayed. The trial would, in all likelihood, have been only the beginning of a long process involving at least one appeal, a possible retrial, with a strong possibility of a bankruptcy filing by Todman and the Todman partners. Counsel for Mr. Jesionowski did point out that any award rendered by the jury in District Court

would accumulate interest at the judgment rate, preserving the present value of the award. However, if the insurance limits are fixed, and Todman and its partners were to file for protection under Chapter 11, the preservation of the present value of the award could be of little actual benefit to the estate.

 It is also worth noting that if possible, a Trustee should always avoid delay. The Trustee has the duty to expeditiously liquidate the estate, and to avoid all unreasonable expenses either in its preservation or distribution. *Matter of Carla Leather, supra* 44 B.R. at 472 (quoting *Rife v. Ruble,* 107 F.2d 84, 86 (6th Cir.1939).

This case has gone on now for more than four (4) years. With the amount of money involved and the number of attorneys and accountants participating in this matter, one could envision this liquidation extending far into the forseeable future.

However, there comes a time in all litigation, and particularly Bankruptcy litigation, when the costs of continuing the battle may result in diminishing returns and one may ultimately find that the battle was won but the war was lost, especially when the bills are presented and paid.

To continue to delay the ultimate distribution of assets to the creditors while increasing the costs would result in a lessened dividend and would serve to thwart the major purpose of the Bankruptcy Code.

THE INTERESTS OF CREDITORS AND THEIR VIEWS

This category, "the interests of creditors", appears to favor settlement. By far, the largest creditor of the Bell & Beckwith estate is SIPC, and it supports the settlement. The only "creditor" objecting to the amount of the settlement, is Mr. J. Robert Jesionowski, a partner. The other Objectors reserved the right to Object to the settlement at the Hearing, but did not do so, except as to the issue of the effect of the lawsuits they maintain for allegedly "personal" claims against Todman.

Counsel for Mr. Jesionowski voiced several concerns. The first being that it was inequitable for Todman, and the Todman partners, to escape having to pay anything out of their own pockets when the Bell & Beckwith losses were so much greater than the insurance coverage. It should be kept in mind that the criteria for settlement is whether the settlement is in the best interest of the estate. The Court may consider the equities, but in this case it does not appear that "a pound of flesh" is going to be of much benefit to the estate. The suit against Todman was for negligence, not for intentional wrongdoing. The Trustees of the three estates all believe that the most they are going to recover is their share of the full amount of the Todman insurance coverage. This Court, based upon the testimony and evidence, does not intend to substitute its judgment for that of the Trustee on this matter.

 Counsel for Mr. Jesionowski also asserts that the Trustee should have more fully explored the assets of the Todman partnership, and possible recovery against the insurance company for more than the policy limits based upon bad faith. The Court disagrees. In pursuing litigation in the name of the Debtor, the Trustee's obligation is not to burden the assets of the estate with costs and expenses arising out of the pursuit of all possible questions and theories that may be presented for litigation. *Matter of Carla Leather, Inc., supra* 44 B.R. at 472. The Trustee did provide the Court with an analysis of the Todman assets based on sworn affidavits of the partners and modified bankruptcy schedules. Further, the settlement agreement provides for certain remedies if it is discovered that Todman or the partners failed to list all their assets.

 The issue was also raised as to the basis for the settlement amount. The proponents of the settlement could not give any mathematical basis for the exact figure to which the parties finally agreed. Such a formula is not required. The bargaining parties were able to state the factors which they considered in arriving at the 51.875% figure. They considered the litigation lead of Bell and Beckwith, the accompanying higher litigation costs Bell & Beckwith incurred, and the fact that AMC and BBS

had the greater actual losses. This explanation of the settlement amount is sufficient. An examination of these factors also answers Mr. Jesionowski's Objection to the AMC and BBS Trustee's receiving any of the insurance proceeds. In light of the strength and size of the AMC and BBS cases, the Trustee's decision to agree to split the money appears to have been a prudent one.

Finally, it was suggested that the three Trustees should work together to force Todman and the partners into involuntary bankruptcy. There are several drawbacks to this suggestion. First, to have standing to commence an involuntary case against Todman, the three Trustees would all have to gain final, non-contingent Judgments against Todman. 11 U.S.C. § 303(b)(1). Finalizing the three judgments would entail a very long delay, enormous expense to the estates, and significant risk. These risks include the fact that the Todman insurance coverage is still open for claims. If another major lawsuit was brought against Todman, that suit could be settled out from under the Trustees, even if they were cooperating with each other. While that may seem a remote possibility, it must be remembered that, at one time, the failure of a *second* brokerage audited by Todman seemed only a remote possibility. As it stands now, the insurance money is in an interest bearing account, with Bell & Beckwith's rights to it perfected by possession.

For all the above reasons, the Court finds the settlement to be in the best interest of the estate of Bell & Beckwith.

## OBJECTIONS BASED ON TRUSTEE'S STANDING TO SETTLE CLAIMS ON THE BEHALF OF THE McKENNYS AND THE PARTNERS

The McKennys, as customers, and the Bell & Beckwith Partners, in their own right, object to the settlement to the extent the Trustee seeks to release, settle or dismiss their claims against Todman. They assert that to the extent that the Trustee seeks to settle their claims against Todman, the Trustee lacks standing to enter into the proposed settlement. And, as a factual matter, the intended settlement, release, or dismissal of these claims against Todman renders the proposed settlement unfair and prejudicial to the rights of the McKennys and the Partners. The Objectors request that the Court issue a Judgment declaring that the McKennys and the Partners will not be bound by the settlement to the extent it purports to foreclose the Objectors from pursuing any claims or remedies available to them against Todman arising from its involvement with Bell & Beckwith.

■ Initially, this Court must note that the Bankruptcy Court is a unit of the District Court. Both cases, the lawsuit brought by the McKennys and the one brought by the Partners, are before the District Court. The McKennys lawsuit is before The Honorable Alice M. Batchelder and the Partners lawsuit is before The Honorable Nicholas J. Walinski. The corollary to the fact that those cases are before the District Court is, of course, that they are *not* before this Court. It would appear to be improper for this Court to make any determination as to the rights of the McKennys and the Partners when these cases, and the full records, are not before this Court. Further, because a determination of the Objector's rights to continue their lawsuits is not necessary for the resolution of the issues presented, any such declaratory judgment would be merely *dicta*.

The Trustee proposes to give Todman and its insurance carriers, a release which is the nature of a quitclaim deed. The Trustee releases "from any and all claims and demands at law or in equity and causes of action of every kind and nature whatsoever, occuring or arising from the beginning of time to the date of this release, which the Bell & Beckwith Trustee, his successors as assigns, or the liquidation estate of Bell & Beckwith had or has against the Releasee, his heirs, executors, administrators, successors and assigns ..." Settlement Agreement, Exhibit I. Because the Trustee is only releasing claims which he had or has against Todman, there is no reason for this Court to consider the effect of this release on other

cases which are before a higher Court. If Congress intended to give a SIPA Trustee the standing and power to bring all claims arising out of the Debtor's relationship with its accountant, then the Trustee has the power to settle them. If Congress did not so intend, then the McKennys and the Partners will be able to pursue their "personal" claims. That is a determination for the respective District Court Judges to make.

In addition to the Objection based on the Trustee's standing, the Objectors make two other related arguments against the settlement. They assert that if the McKennys and the Partners are not specifically excepted from the preclusive effects of the settlement agreement, the settlement is substantively unfair and prejudicial.

These Objections must fail. First, the Trustee is only settling those claims which he has the right to bring under the provisions of Title 11 and Title 15, United States Code. The Trustee has not included any clause in the settlement agreement which specifically bars the claims of the Objecting parties. If the Objectors are barred, then it is by the provisions of the federal law which give the Trustee the power to bring the claims which the McKennys and Partners believe to be personal to them. The Trustee would, of course, be remiss in his fiduciary duties if he did not use the full extent of his powers to bring about the best possible settlement for the estate of Bell & Beckwith.

The second problem with the Objector's "factual" arguments against any foreclosure of their lawsuits is that they have failed to demonstrate that the settlement, even if it includes the settlement of their lawsuit, is not in the best interest of the estate of Bell & Beckwith. The Trustee, as proponent of the settlement agreement, has met his burden of persuasion. The Objectors have failed to rebut the Trustee's showing that the settlement is in the best interest of the estate. *In re Baldwin-United Corp.*, 607 F.Supp. 1312, 1320 (S.D. N.Y.1985). Given the size of Bell & Beckwith's and BBS's losses, it does not appear that the presence or absence of the Objec-

tor's claims causes the settlement to fall below the lowest point in the range of reasonableness. *In re Technology for Energy Corp.*, 56 B.R. 307, 311 (Bankr.E.D. Tenn.1985). Consequently, it appears that the release or non-release of the Objector's claims does not, and should not, alter this Court's finding that the settlement is reasonable and in the best interest of the estate. The McKennys and the Partners have argued that the settlement would be unfair if it had the effect of precluding their lawsuits. However, they have consistently framed their arguments in terms of the perceived unfairness to them individually. The Court, in approving this proposed settlement, has determined that the settlement is in the best interest of the Bell & Beckwith estate. That finding, when coupled with the "quitclaim" nature of the Trustee's release, are sufficient to persuade the Court that the Objections to the settlement agreement should be denied. They are, more properly, a determination for the District Courts.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is ORDERED that the Objections of Charles A. and Mary L. McKenny, the Bell & Beckwith partners: J. Robert Jesionowski, George M. Todd, Roscoe R. Betz, Robert R. Coon, Jr., Thomas L. McGhee, John E. Thompson and Donald Hennings and J. Robert Jesionowski separately are OVERRULED.

It is FURTHER ORDERED that the proposed Settlement Agreement should be approved.